[No. B013210. Second Dist., Div. Seven. July 21, 1986.]

CYNOLA McALLISTER, Plaintiff and Appellant, v.
SOUTH COAST AIR QUALITY MANAGEMENT DISTRICT,
Defendant and Respondent.

**654**

**COUNSEL**

Sandy English for Plaintiff and Appellant.

Goldstein & Kennedy and Gregory G. Kennedy for Defendant and Respondent.

## OPINION

**THOMPSON, J.**—This is an appeal from an order striking plaintiff's punitive damages claim from her first amended complaint for damages and/ or injunctive relief against defendant the South Coast Air Quality Management District. The sole issue on this appeal is whether Government Code section 818, which precludes the imposition of punitive damages against a public entity, violates the equal protection clauses of the Fourteenth Amendment of the United States Constitution, and article I, section 7 of the California Constitution. We shall conclude that because the complaint only alleges ad hoc acts of misbehavior by employees of a public agency, the statutory preclusion against the imposition of punitive damages is not in this instance violative of equal protection. We do not reach the issue of whether such a statutory preclusion should be upheld were a plaintiff to allege the harm resulted from legislation, rules or policies the public agency itself enacted.

### FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff has been employed since November 1980, as a personnel analyst by defendant, a public entity created pursuant to Health and Safety Code section 40400 et seq., with the responsibility for controlling air pollution. Plaintiff, a Black female, alleges that she has been discriminated against on the basis of sex and/or race, that she has been wrongfully denied a pay increase, and that she has received unwarranted warnings, written reprimands and negative comments in her performance evaluations. She claims she was harassed, intimidated and retaliated against for filing claims, grievances, or complaints alleging discrimination due to her race and/or sex. She contends that although she was qualified for promotions, she was denied the right to interview for the openings.

Plaintiff filed a claim of discrimination with the Department of Fair Employment and Housing on or about January 17, 1983; the claim file was closed on or about July 2, 1983. The complaint was filed within one year thereafter.

The first amended complaint alleges causes of action for: (1) discrimination in employment pursuant to Government Code section 12940 et seq.; (2) retaliation in employment pursuant to Government Code section 12940 et seq.; (3) breach of the implied covenant of good faith and fair dealing; (4) intentional infliction of emotional distress; and (5) negligent infliction of emotional distress.

Plaintiff claims she suffered "loss of wages, mental anguish and emotional distress, irritability, inability to sleep, difficulty in relationships with others,

unnecessary difficulty in employment relations, profound shock to the nervous system, and inability to heal from injuries or illness that existed prior to the acts and omissions of defendants."

The trial court sustained, with leave to amend, defendant's demurrers to the third, fourth, and fifth causes of actions, and ordered stricken from the amended complaint all references to and requests for punitive damages.

## DISCUSSION

Government Code section 818, codified as part of the 1963 Government Tort Claims Act (claims statute or Tort Claims Act), states: "Notwithstanding any other provision of law, a public entity is not liable for damages awarded under Section 3294 of the Civil Code or other damages imposed primarily for the sake of example and by way of punishing the defendant." Insofar as defendant is a public agency (Gov. Code, § 20009 et seq.), the trial court was compelled by Government Code section 818 to strike those portions of the complaint which sought punitive damages against defendant. (*Austin* v. *Regents of University of California* (1979) 89 Cal.App.3d 354, 358 [152 Cal.Rptr. 420].)

Plaintiff contends that "modern public policy" now demands that section 818's governmental immunity against punitive damages be abolished. Plaintiff contends that because private employers are subject to compensatory and punitive damage awards for breach of the implied covenant of good faith and fair dealing (see *Cleary* v. *American Airlines, Inc.* (1980) 111 Cal.App.3d 443, 453 [168 Cal.Rptr. 722]), section 818's proscription against the imposition of punitive damages against public entity employers creates an arbitrary and unreasonable classification in violation of public policy.

We have found no case, nor have the parties directed us to any, wherein the statutory proscription against punitive damages was ruled unconstitutional. In fact, the majority of jurisdictions has concluded that punitive damages against a public entity are not allowed, absent a specific statute expressly allowing them. (See, e.g., *Euge* v. *Trantina* (8th Cir. 1970) 422 F.2d 1070, 1074; *Fox* v. *City of West Palm Beach* (5th Cir. 1967) 383 F.2d 189, 195; *Smith* v. *District of Columbia* (D.C.App. 1975) 336 A.2d 831; *Ranells* v. *City of Cleveland* (1975) 41 Ohio St.2d 1 [321 N.E.2d 885, 887-889]; *Foss* v. *Maine Turnpike Authority* (Me. 1973) 309 A.2d 339, 345-346 [64 A.L.R.3d 1230]; *Cole* v. *City of Houston* (Tex.Civ.App. 1969) 442 S.W.2d 445, 451; *Chappell* v. *City of Springfield* (Mo. 1968) [423 S.W.2d 810, 812-815]; *Fisher* v. *City of Miami* (Fla. 1965) 172 So.2d 455; *Brown* v. *Village of Deming* (1952) 56 N.M. 302 [243 P.2d 609, 618]; *Desforge*

v. *City of West Saint Paul* (1950) 231 Minn. 205 [42 N.W.2d 633, 634, 19 A.L.R.2d 898]; *Lineberger* v. *City of Greenville* (1935) 178 S.C. 47 [182 S.E. 101, 102].) Only a minority of states allow punitive damages. (See, e.g., *Hennigan* v. *Atlantic Refining Company* (E.D.Pa. 1967) 282 F.Supp. 667, 682-683, affd. (3d Cir. 1968) 400 F.2d 857; *Young* v. *City of Des Moines* (Iowa 1978) 262 N.W.2d 612 [1 A.L.R.4th 431]; *Mastrodonato* v. *Town of Chili* (1972) 39 App.Div.2d 824 [333 N.Y.S.2d 89, 90].) (See generally, Annot., Recovery of Exemplary or Punitive Damages from Municipal Corporation (1980) 1 A.L.R.4th 448.)

Plaintiff's counsel relies upon several cases in other jurisdictions, each of which we distinguish below.

In *Bonsignore* v. *City of New York* (S.D.N.Y. 1981) 521 F.Supp. 394, affd. 683 F.2d 635, a New York City police officer shot and injured his wife and then killed himself with the gun that he was required by city regulations to carry while off duty. The wife sued the city, alleging that the city, through a psychological testing program, should have discovered that her husband was not fit to carry a gun. The jury awarded her punitive and compensatory damages. The district court denied defendant's motion to set aside the award of punitive damages, stating the following reasons upon which plaintiff herein relies: "[T]he jury could have concluded that an award of punitive damages was necessary as a deterrent, to prod the Department into adopting meaningful measures to prevent the recurrence of tragedies like this one." (521 F.Supp. at p. 402.) The trial court found the award to be "a moderate but firm expression of the seriousness with which the jury regarded the insufficiency of defendant's efforts to deal with a persistent but readily manageable problem." (*Id.,* at pp. 402-403.)

However, plaintiff fails to recognize that both the trial court and the appellate court stressed that the defendant in *Bonsignore* had failed to object to the punitive damages instruction at trial. (*Id.,* at p. 402; 683 F.2d at p. 638.) The appellate court reasoned that because the law in New York on municipal liability for punitive damages was as of that time unclear, it would not attempt to predict the ultimate resolution of the issue in a diversity case where the city failed to object to the instruction at trial. Thus we distinguish *Bonsignore* on the ground that California, unlike New York, has a clear cut statutory proscription against the imposition of punitives against a public entity. *Bonsignore* does not address the constitutionality of a statutory scheme such as ours.

Plaintiff points out that the New York Court of Claims stated in *Hayes* v. *State* (1975) 80 Misc.2d 498 [363 N.Y.S.2d 986], revd. 50 App.Div.2d 693 [376 N.Y.S.2d 647], affd. 40 N.Y.2d 1044 [392 N.Y.S.2d 282, 360

N.E.2d 959], that no language in the state Constitution or in section 8 of the New York Court of Claims Act prohibits the imposition of punitive damages. The court in *Hayes* thus refused to hold the state immune from punitive damages, stating: "[T]o hold that the State of New York is not subject to an award for punitive damages is to impress a judicial limitation upon the clear and unequivocal language of the Legislature." (*Id.*, at p. 994.) However, because *Hayes* was reversed on other grounds, the appellate division did not reach the issue of punitive damages (50 App.Div.2d 693, 694 [376 N.Y.S.2d 647]), and the Court of Appeals affirmed (40 N.Y.2d 1044 [392 N.Y.S.2d 282, 360 N.E.2d 959]).

In any event, in 1982, the New York Court of Appeals subsequently held, in *Sharapata* v. *Town of Islip* (1982) 56 N.Y.2d 332 [452 N.Y.S.2d 347, 437 N.E.2d 1104], that the waiver of sovereign immunity contained in the Court of Claims Act does not permit punitive damages to be assessed against the state or its political subdivisions. (*Id.*, at p. 334 [452 N.Y.S.2d at p. 348].) Thus, plaintiff's reliance on earlier New York cases to the contrary is misplaced.

*Young* v. *City of Des Moines, supra,* 262 N.W.2d 612, also fails to address the issue before us. In *Young,* the Iowa Supreme Court upheld an award of punitive damages against a municipal corporation in an action brought under the Iowa Governmental Subdivision Tort Claims Act, Iowa Code chapter 613A. Unlike chapter 25 of the Iowa State Tort Claims Act, chapter 613A did not contain a specific proscription against the imposition of punitive damages. (*Id.*, at p. 620.) The *Young* court concluded that because it assumed the Legislature was well aware of the preexisting prohibition against imposition of punitive damages against the state at the time chapter 613A of the governmental subdivision act was passed, the Legislature's "failure to include a like immunity for municipal corporations can scarcely be attributed to inadvertence or oversight." (*Id.*, at p. 622.) Such is obviously not the case before us.

The case of *City of Minneapolis* v. *Richardson* (1976) 307 Minn. 80 [239 N.W.2d 197, 85 A.L.R.3d 389], is also inapposite. In *Richardson,* punitive damages that were awarded to a plaintiff who sued for false arrest under the state's Human Rights Act were affirmed on appeal. However, unlike California, Minnesota has enacted a statutory provision allowing the award of punitive damages against governmental defendants found guilty of violating the state's Human Rights Act. (See *Huygen* v. *Plums Enterprises of St. Paul, Inc.* (Minn.App. 1984) 355 N.W.2d 149, 155.)

In *Roberts* v. *State of California* (1974) 39 Cal.App.3d 844 [114 Cal.Rptr. 518], the court upheld the constitutionality of the claims statute requirement

that timely notice be given to the state of a claim against it. (Gov. Code, § 910 et seq.) Like the plaintiff herein, the plaintiff-appellant in *Roberts* relied on decisions of other jurisdictions upholding punitive damage awards. *Roberts* rejected these decisions, emphasizing that unlike other jurisdictions where the state waived its tort immunity, in California there *is* governmental immunity, *except* for the very specific areas in which the statute allowed suits. (*Roberts, supra,* 39 Cal.App.3d at p. 849.) As the court stated in *Roberts,* California's claims statute was "enacted after the decision of the California Supreme Court in *Muskopf* v. *Corning Hospital Dist.* (1961) 55 Cal.2d 211 [11 Cal.Rptr. 89, 359 P.2d 457], which held that common law governmental immunity must be discarded and indicated a disposition to treat all tortfeasors, public and private, alike insofar as basic liability was concerned. The legislative response to *Muskopf* achieved a result entirely different from that which plaintiff urges should have been effected. It enacted a series of statutes to provide, in effect, that there *is* governmental immunity *except* for the very specific areas in which the statutes allowed suits. [Citations.] Since the enactment of the statutes in question, courts have uniformly upheld them against constitutional attack and particularly against a classification challenge. (*Tammen* v. *Co. of San Diego* [1967] 66 Cal.2d [468], 481 [58 Cal.Rptr. 249, 426 P.2d 753]; see also, *Bozaich* v. *State of California* [1973] 32 Cal.App.3d [688], 699 [108 Cal.Rptr. 392]; *Hom* v. *Chico Unified Sch. Dist.* (1967) 254 Cal.App.2d 335, 338 [61 Cal.Rptr. 920].)" (*Roberts, supra,* 39 Cal.App.3d at p. 849; italics in original.)

■ The equal protection clause "does not prohibit legislative classification and imposition of statutory restraints on one class which are not imposed on another. *The classification is constitutionally infirm only if it bears no rational relationship to the achievement of a legitimate state objective.* State Legislatures are presumed to have acted within their constitutional powers despite the fact that, in practice, their laws result in some inequality. *A statutory discrimination will not be set aside as a denial of equal protection of the laws if any state of facts reasonably may be conceived to justify it.* [Citations.]" (*Stanley* v. *City and County of San Francisco* (1975) 48 Cal.App.3d 575, 580-581 [121 Cal.Rptr. 842]; italics in original.)

■ When judged according to the foregoing principles, the California claims statute has been found to withstand constitutional challenges leveled against it: "[T]he classification made between governmental and nongovernmental tort victims may be said to have a fair and substantial relation to the object of the legislation and to promote a number of legitimate state interests." (*Id.,* at p. 581.) ■ This is in part because punitive damages, unlike compensatory damages, are not recoverable as a matter of right. (*Finney* v. *Lockhart* (1950) 35 Cal.2d 161, 163 [217 P.2d 19]; *Brewer* v.

*Second Baptist Church* (1948) 32 Cal.2d 791, 800 [197 P.2d 713].) The basic justification for a punitive award is to punish the offender and to deter others from committing similar wrongs. (*Roemer* v. *Retail Credit Co.* (1975) 44 Cal.App.3d 926, 937 [119 Cal.Rptr. 82].) Punishment and deterrence being the principal reasons for allowing punitive damage awards, "the courts have historically declined to allow it in actions against municipal corporations for torts committed by their employees." (*Fisher* v. *City of Miami, supra,* 172 So.2d at p. 457.) In California, while the public employee may be liable for punitive damages, the public entity will not indemnify the employee. (Gov. Code, § 825.)

As cataloged by the Florida Supreme Court in *Fisher, supra,* 172 So.2d at page 457, the public policy reasons which motivate the proscription against punitive damage awards appear sound: "Since punishment is the objective, the people who would bear the burden of the award—the citizens—are the self-same group who are expected to benefit from the public example which the punishment makes of the wrongdoer.

"Another aspect of the matter is the rule which permits evidence of the wealth of a tortfeasor as a measure of the amount of punitive damages which should be awarded. [Citations.] The theory is—the wealthier the wrongdoer, the greater the award. Otherwise stated, a relatively small sum might be adequate to punish a poor man. A much greater sum, for the same wrong, would be needed to punish a rich man. If this were allowed against municipalities, it would permit evidence of the unlimited taxing power as the measure of a proper verdict. This is often suggested as an adequate justification for denying an award of punitive damages against a city.

"The petitioner and amicus curiae recognize the evidentiary point last discussed. However, they urge that we hold for punitive damages but prohibit evidence of the wealth of the city. This apparent compromise would completely eliminate the punishment element which is a prime justification for the award at the outset. This is so because there would then be no guide to the jury regarding the amount necessary to administer effective punishment.

"The deterrence element likewise adds little justification for this type of award against a municipality. In the first place it is to be assumed that the municipal officials will do their duty and if discipline of a wrongdoing employee is indicated, appropriate measures will be taken without a punitive award.

"Further, a huge award against the City would not necessarily deter other employees who generally would be unlikely to be able to pay a judgment assessed against them personally."

Because plaintiff does not allege that the harm resulted from legislation, rules or policies enacted by a public entity, we do not reach the issue of whether the statutory proscription against imposition of punitive damages is violative of equal protection under those circumstances. Based on the complaint before us, which only alleges ad hoc acts of misbehavior by employees of a public entity, we find no basis in this case to carve an exception to the general rule prohibiting the imposition of punitive damages.

We therefore conclude that, under the facts of this case, Government Code section 818's proscription against imposition of punitive damages is not violative of equal protection.

### DISPOSITION

The order striking plaintiff's claims for punitive damages is affirmed.

Lillie, P. J., and Johnson, J., concurred.