[No. E010816. Fourth Dist., Div. Two. Aug. 21, 1992.]

COURTESY AMBULANCE SERVICE OF SAN BERNARDINO,
Petitioner, v.
THE SUPERIOR COURT OF SAN BERNARDINO COUNTY,
Respondent;
STATE COMPENSATION INSURANCE FUND, Real Party in Interest.

**COUNSEL**

Nicholas P. Roxborough and Esteban G. Gallegos for Petitioner.

No appearance for Respondent.

Krimen, Bjornsen & Klein, Sheppard, Mullin, Richter & Hampton, Finley L. Taylor, Justine M. Casey and Anthony Castrilli, Jr., for Real Party in Interest.

**OPINION**

DABNEY, J.—The question presented in this original proceeding is whether the State Compensation Insurance Fund (hereinafter SCIF), when sued in tort, can be held liable for punitive damages. We conclude that it can, and that the trial court accordingly erred in granting SCIF's motion to strike the request for such damages from the complaint.

The facts of the case—or, more properly, the allegations of the complaint—need not be recited in detail. Petitioner Courtesy Ambulance Service of San Bernardino (hereinafter Courtesy) has been for several years insured for workers' compensation coverage by SCIF. It has sued SCIF both in contract and in tort, alleging generally that SCIF has, or may have, improperly calculated premiums by overestimating the amounts necessary for re-serves, and has also compelled itself to charge higher premiums by its inefficient handling of claims.[1] The complaint includes two causes of action, those for 1) breach of the covenant of good faith and for 2) constructive fraud, upon which Courtesy bases a claim for punitive damages.

---

[1] We express no opinion on the adequacy of any specific allegation to support recovery, as a matter of substantive law.

SCIF filed a demurrer and a motion to strike. The trial court overruled the demurrer, but granted SCIF's motion to strike the claims for punitive damages on the basis that, as a public entity or agency, it was not liable for such damages pursuant to the provisions of Government Code section 818.[2]

SCIF, of course, takes the position before this court that the trial court's ruling was correct. Courtesy, however, asserts that SCIF has been deprived of this statutory immunity by the enactment of Insurance Code section 11873.[3] That statute, with exceptions not here relevant, provides that ". . . the fund [SCIF] shall not be subject to the provisions of the Government Code made applicable to state agencies generally or collectively, unless the section specifically names the fund as an agency to which the provision applies." Resolution of the problem requires an analysis of the origins and function of SCIF.

■ First, however, we dispose of the argument that the issue is not properly before us. SCIF devotes considerable time in an attempt to persuade this court that the petition should be rejected on procedural or technical grounds. SCIF argues that Courtesy has an adequate remedy at law by way of appeal from the eventual judgment. Certainly we are not overly willing to review issues at the pleading stage; however, where a ruling on the pleadings deprives a party of a substantial part of its claim, and where a significant issue of law is involved, extraordinary review is appropriate. (*Babb* v. *Superior Court* (1971) 3 Cal.3d 841, 851 [92 Cal.Rptr. 179, 479 P.2d 379].) Our issuance of the alternative writ operated as a necessary and conclusive determination that this is such a case.[4] (*People* ex rel. *Younger* v. *County of El Dorado* (1971) 5 Cal.3d 480, 492 [96 Cal.Rptr. 553, 487 P.2d 1193].)

---

[2] "Notwithstanding any other provision of law, a public entity is not liable for damages awarded under Section 3294 of the Civil Code or other damages imposed primarily for the sake of example and by way of punishing the defendant."

[3] All undifferentiated statutory references are to the Insurance Code. References to other codes will be specified.

[4] SCIF raised this argument in its preliminary opposition, which we solicited before determining to issue the alternative writ. Failing to appreciate the determination inherent in our issuance of the writ, SCIF then repeated the argument both in its answer and in a demurrer.

Having reviewed the petition and the preliminary opposition of 28 pages, which we considered comprehensive, in issuing the alternative writ we invited SCIF to stand on the opposition already filed. Instead, SCIF filed a 32-page demurrer and a 34-page answer, which are virtually identical to each other and no noticeable improvement, in terms of persuasiveness, over the preliminary opposition. As a result, Courtesy, which had already filed a substantial reply to the preliminary opposition, felt compelled to file a further traverse.

Far be it from us to restrict advocacy, and we have diligently perused all of the submitted papers. However, while we recognize that there is notable state precedent for the position that "If you've seen one tree, you've seen them all," we believe the amount of paper generated by this case, involving a rather limited issue, to be somewhat excessive.

SCIF then points out that in 1991, another insured of SCIF (represented by the same counsel) filed a similar petition with Division Five of the Second District, claiming error in the trial court's grant of summary adjudication on the issue of the availability of punitive damages, and that this petition was summarily denied on the basis that the remedy at law was adequate. We simply state that our view of the matter is different, and that we are not bound to do as the Second District does—even if the Supreme Court denied review of that order.[5]

We proceed to the merits of the case.

## I.

## A.

### *The Statutory Framework*

Former article XX, section 21 of the state Constitution, as amended in 1918 (now art. XIV, § 4) authorized the Legislature to create the State Compensation Insurance Fund as part of the grant of power to establish a general system of compensation for industrial injuries. (In fact, SCIF had actually been created as part of a comprehensive scheme for workers' compensation enacted in 1913; the Constitutional amendment five years later was designed "[t]o give legality to an already accomplished fact." (*State Comp. Ins. Fund* v. *McConnell* (1956) 46 Cal.2d 330, 337 [294 P.2d 440].) The surrounding historical circumstances suggest that the creation of SCIF was prompted by the desire to ensure that affordable workers' compensation insurance would be available to employers, when coverage became mandatory. (See *State Comp. Ins. Fund* v. *McConnell, supra*, at p. 345, fn. 2, quoting Governor Hiram W. Johnson's criticism of " 'the rapacity of insurance companies' concerning insurance for industrial accidents.")

SCIF is designed to be "fairly competitive with other insurers" and to be "neither more nor less than self-supporting." (§ 11775.) It is authorized to "transact workers' compensation insurance required or authorized by law of this state to the same extent as any other insurer." (§ 11778.) Once SCIF was established, the state retained no further liability for its obligations beyond SCIF's specific assets. (§ 11771.) Notably, property belonging to SCIF is not considered "state property" for the purposes of exemption from state taxes,

---

[5]We mean no disrespect to our brothers and sisters of the Second District. We note that by the time this petition was filed, the existence of the previous litigation lent substance to Courtesy's assertion that the issue was one of substantial importance and interest, and therefore encouraged us to issue the writ.

and SCIF is generally subject to the payment of taxes on the same basis as any other insurer. (Rev. & Tax. Code, §§ 202, 12203.)

Among SCIF's other unique characteristics is its exemption from the public meeting and public inspection of records requirements of Government Code sections 11120 et seq. and 6250 et seq. (§ 11770.5.) Demands on policies need not be pursued through the claims provisions of Government Code section 900 et seq. (§ 11793.) Finally, section 11873 excepts SCIF from the provisions of the Government Code made applicable to other state agencies. It is this provision that we will specifically examine below.

As the statutory provisions make clear, SCIF is possessed of "a special and unique character" among state agencies. (*Burum* v. *State Comp. Ins. Fund* (1947) 30 Cal.2d 575, 586 [184 P.2d 505].) We now turn to the question of whether this uniqueness extends to its liabilities in tort.

B.

*The 1979 Statutory Amendments*

In 1979, the Legislature passed legislation which substantially amended the statutes governing SCIF; among that legislation was section 11873, at issue here. ■■■ Both parties rely on the legislative history surrounding these enactments to support their opposing positions.[6]

■ A summary and analysis prepared by the Assembly Finance, Insurance, and Commerce Committee states that the bill under consideration was designed to increase SCIF's autonomy and lessen its dependence on the Department of Industrial Relations. Section 11773 was amended to establish the fund as a "public enterprise fund" rather than a state revolving fund. As one item of improving economic efficiency, SCIF was given the authority

---

[6]As we explain below, the legislative history serves only a limited purpose in this case. We set forth some of its substance primarily to demonstrate that it is not inconsistent with our resolution of the case, and that it was therefore not necessary for us to strain to find an ambiguity in the statutory language which would permit us to interpret section 11873 in accordance with presumed legislative intent.

Where it is appropriately considered, "legislative history" includes committee reports circulated among the legislators. (*Smith* v. *Rhea* (1977) 72 Cal.App.3d 361, 369 [140 Cal.Rptr. 116].) Statements by individual legislators—even letters sent to the Governor urging his signature—are admissible only if they reflect the general legislative understanding or allude to arguments and discussions which actually took place during the legislative process. (*California Teachers Assn.* v. *San Diego Community College Dist.* (1981) 28 Cal.3d 692, 700-701 [170 Cal.Rptr. 817, 621 P.2d 856].) To the extent that the materials we discuss may not be properly considered on the issue of *legislative* intent, we use them rather as a reflection of *SCIF's* understanding of its effect.

independently to deposit and maintain its funds in financial institutions (previously, SCIF funds were handled through the State Treasurer), and to make investments of excess funds subject only to the restrictions applicable to private insurers. (See now §§ 11797, 11800.)

The committee report also explicitly recites the effect of the amendments as "to exempt the Fund from all provisions of the Government Code except civil service matters unless the Fund is made specifically subject to particular Government Code sections. *Since the purpose of this and earlier legislation is to make the State Fund as much like a private insurance company as possible*, it is felt that many provisions of the Government Code ought not to be applicable to the Fund. *For example, we have been advised by the Fund that it is not entitled to the provisions of the Government Tort Claims Act* and that it may be sued in the same manner as any other private carrier." (Italics supplied.)

Similarly, the bill's legislative sponsor, Assemblyman Jim Ellis, advised the Governor when the bill was presented for signature that the express exemption from the provisions of the Government Code was "in recognition of the State Fund's role as an insurer rather than a governmental function." This manifestly reiterates at least SCIF's position with respect to the effect of the amendments, as well as the underlying justification, i.e., the fact that SCIF is not a typical governmental entity.

It is elsewhere suggested in the legislative history that SCIF affirmatively wished to free itself from the restrictions of the Government Code; it was a sponsor of the underlying bill. Thus, the committee report states that "[w]ithout such an exemption as proposed by Section 15 of the bill, the Fund is concerned that it will have constantly to seek amendments to legislation so as to avoid its becoming unnecessarily subject to certain provisions of the Government Code." Hence it is apparent that SCIF was a moving force behind the adoption of the amendments and was actively involved in seeking the bill's passage.

## II.

### A.

#### The Meaning of the Statute

Nowhere in the legislative history is it recited precisely what provisions of the Government Code, if any, were the specific focus of SCIF's concerns; nor is it clear to what extent, if any, the Legislature intended to tailor the

amendments in SCIF's favor. Courtesy takes the position that the language of section 11773 must be interpreted strictly, and that SCIF is exempt not only from the burdensome requirements of the Government Code, but also from its protections. SCIF argues that this construction is absurd, and that it was only intended to free SCIF from certain (but unspecified) administrative or regulatory restrictions. It points out that one clear purpose of the amendments was to increase SCIF's economic efficiency, and argues from this that we cannot infer a contradictory intention to subject SCIF to large punitive damages awards.

In our view, the matter is relatively clear. Although we have set out some portions of the legislative history with which we have been provided, we remind the parties that "[i]n construing the terms of a statute we resort to the legislative history of the measure only if its terms are ambiguous." (*Title Ins. & Trust Co.* v. *County of Riverside* (1989) 48 Cal.3d 84, 96 [255 Cal.Rptr. 670, 767 P.2d 1148]; see also *Brown* v. *Kelly Broadcasting Co.* (1989) 48 Cal.3d 711, 724 [257 Cal.Rptr. 708, 771 P.2d 406].) We recognize "[i]t is a fundamental rule of statutory construction that a court 'should ascertain the intent of the Legislature so as to effectuate the purpose of the law.' [Citation.]" (*Estate of MacDonald* (1990) 51 Cal.3d 262, 268 [272 Cal.Rptr. 153, 794 P.2d 911].) However, if "language is . . . clear and unambiguous there is no need for construction." (*In re Lance W.* (1985) 37 Cal.3d 873, 886 [210 Cal.Rptr. 631, 694 P.2d 744].)

 With this principle in mind, we conclude that section 11873 requires no construction. The statute states that "the fund shall not be subject to the provisions of the Government Code made applicable to state agencies generally or collectively, unless the section specifically names the fund as an agency to which the provision applies." The statute lists certain specific statutory exceptions from its application, among which is not Government Code section 818.[7] As the maxim states, *inclusio unius est exclusio alterius*. We are not authorized to add exceptions where the Legislature has spoken clearly to prescribe a rule and narrowly limit the exceptions thereto.

 In applying the "plain meaning" rule, we are mindful that "[l]iteral construction should not prevail if it is contrary to the legislative intent apparent in the statute." (*Lungren* v. *Deukmeijian* (1988) 45 Cal.3d 727, 735 [248 Cal.Rptr. 115, 755 P.2d 299].) However, we are not persuaded that the legislative intent to retain the protections of Government Code section 818 can be inferred from the statute itself or even from the surrounding history. The 1979 amendments appear to have been designed to give

---

[7]The exceptions relate to employer-employee relations and state civil service employment.

SCIF greater freedom in conducting its affairs than that enjoyed by more heavily regulated state agencies, with the aim that it compete on more even terms with private insurers. A corollary to this is the recognition that SCIF partakes of many of the characteristics of a private company, rather than a governmental organization.

 SCIF itself apparently informed the Legislature that persons holding claims against it were not required to comply with the claims filing procedures set forth in Government Code section 900 et seq. This rule was established in *Burum* v. *State Compensation Ins. Fund, supra*, 30 Cal.2d at pages 585-586, in which the court relied upon the "special and unique character" of SCIF in holding that a claim against the Fund need not be presented to the Board of Control as a claim against the state under former Political Code sections 667 and 688. (See also *People* v. *Superior Court (Pierpont)* 29 Cal.2d 754, 761-762 [178 P.2d 1], holding that where the state engaged in "proprietary," rather than governmental, activity, it had no common law immunity from tort liability.[8]) SCIF thus recognized that such case law as then existed held that it was not covered by the administrative provisions of the statutes regulating governmental liability; nothing in the materials before us suggests that SCIF took the paradoxical position that it nevertheless desired to confirm that it *was* covered by the substantive provisions of the law.

 Thee 1979 amendments were consistent with this approach, insofar as they freed SCIF from regulation; insofar as the addition of section 11873 also eliminated the protection of Government Code section 818, it is similarly consistent with the understanding that SCIF operates in a proprietary manner and is not entitled to the protection given to the government in the exercise of a traditional function. While exposing SCIF to punitive damage liability obviously increases its economic risk, this is not incompatible with the suggested goal of levelling the field of competition; it merely *removes* an arguably unfair advantage which SCIF would otherwise enjoy over its wholly private competitors.[9] Thus, we do not consider that our interpretation imposes an absurd result, but find it not inconsistent with the legislative purpose. (Cf. *In re Eric J.* (1979) 25 Cal.3d 522, 537 [159 Cal.Rptr. 317, 601 P.2d 549].)

---

[8]As noted above, the bill's sponsor, in sending the bill to the Governor for signature, described SCIF's role as "an insurer rather than a governmental function."

[9]As SCIF argues, it is intended to be self-supporting. However, it is also intended to be *fairly* competitive with other insurers. (§ 11775.)

## B.

### *SCIF's Remaining Contentions*

SCIF's next argument concerning statutory construction is not wholly without appeal, although we find it too technical. ■ It argues that section 11873 evinces the intent to eliminate the applicability of only those provisions of the Government Code to which SCIF would otherwise be *subject.* It argues that it is not *subject* to an immunity, but is rather *protected* by it, and that section 11873 therefore on its face does not apply to Government Code section 818.

However, we cannot, without more support, attribute to the Legislature such semantic distinctions. The clause upon which SCIF relies reads in its entirety "[SCIF] shall not be *subject* to the provisions of the Government Code *made applicable* to state agencies generally or collectively, unless the section specifically names the fund as an agency to which the provision *applies.*" (Italics supplied.) We think the terms "subject to" and "applicable" or "applies" are used interchangeably in the statute, and that it would strain construction to attribute to the former term an intent that it cover only those provisions which are in some respect burdensome to the public agency.

It is true that the committee report quoted above reflected SCIF's concerns that without legislation such as section 11873, it might be compelled frequently to seek specific exemptions from provisions to which it was "unnecessarily subject." However, SCIF itself also represented to the Legislature that it was already not subject to the legal protections of the claims requirements. (See *Burum, supra.*) It is therefore reasonable to assume that the legislative desire was to complete the process of "deregulation," and we reject SCIF's assertion that it is entitled to shelter under favorable provisions at the same time that it conducts its business independent of restrictive governmental laws.

The Government Code contains a number of other immunities and protections which it would be patently unfair and illogical to apply to an organization such as SCIF, which in its purpose and everyday function is indistinguishable from a private corporation. For example, Government Code section 822.2 immunizes the public employee from the consequences of negligent or intentional misrepresentation, unless fraudulent in intent; section 818.8 immunizes the employer public entity even if the employee's conduct was actively fraudulent. (See *Harshbarger* v. *City of Colton* (1988) 197 Cal.App.3d 1335, 1339-1340 [243 Cal.Rptr. 463].) Under SCIF's hypothesis, if an employee selling insurance on its behalf misrepresented

coverage, there would be no liability on SCIF's part even if the employee made the misrepresentations with intent to defraud. The language of the statute, and such of its intent as we can glean, does not compel this result.

SCIF apparently wished to be treated like a private company; so be it. To the extent that this deprived SCIF of certain advantages at the same time that it lifted certain burdens, we cannot say that section 11873, and our interpretation of its intent, is either unfair or unreasonable.[10]

Next, we believe that SCIF places unjustified reliance on *McAllister* v. *South Coast Air Quality etc. Dist.* (1986) 183 Cal.App.3d 653 [228 Cal.Rptr. 351], which involved a plaintiff's challenge to the constitutionality of Government Code section 818's proscription of an award of punitive damages against a public entity. No question was raised concerning the applicability of that statute to the subject public entity.

First, we must observe that *McAllister* is not relevant because—as we hold above—the statutory immunity has been abrogated and it would be absurd to hold that the Legislature removed an express statutory immunity with the intent that it be replaced by a common law immunity. The effect of the 1979 amendments to the Insurance Code was to limit the extent to which SCIF was to be treated as a public entity; once the statutory immunity was lifted, there is no logical justification for replacing it with any other.

Furthermore, we do not find the discussion in *McAllister* inconsistent with our result. The court recognized that most jurisdictions do not permit an award of punitive damages against public entities without specific statutory authority. In California, of course, this reluctant approach is codified in the statute expressly forbidding such damages. We do not quarrel with the court's discussion of the policy reasons in favor of such a rule: the unfairness of placing the financial burden on innocent taxpayers, the difficulty of assessing such damages against a municipality with broad taxing powers, and the limited deterrent effect. However, as applied to this case, these arguments miss the mark. SCIF, as noted, operates on a self-sufficient basis, and it concedes that the burden would be borne not by the taxpayers,

---

[10]Courtesy cites cases in which SCIF was sued on common law or statutory theories not applicable to public entities under the tort liability limitations of Government Code section 815 et seq. In the cases cited (e.g., *Everfield* v. *State Comp. Ins. Fund* (1981) 115 Cal.App.3d 15 [171 Cal.Rptr. 164], involving a claim of bad faith and fraud in denying or delaying payments) the issue of the extent of SCIF's exposure to tort liability was not raised, and it is axiomatic that cases are not authority for points not raised and discussed. (*Hart* v. *Burnett* (1860) 15 Cal. 530, 598.) However, it may be of some importance that SCIF has apparently never previously claimed immunity based on the Government Code sections.

but by its customer-employers, who would be free to seek coverage elsewhere if SCIF chose to recoup its losses by raising rates rather than through other economies. SCIF's financial position is not dependent upon the taxing power and there is little likelihood of a reckless award against it. ■ (We note that a plaintiff seeking punitive damages must present evidence of the defendant's wealth or financial condition, to ensure that any award is rationally based. (*Adams* v. *Murakami* (1991) 54 Cal.3d 105, 115-116 [284 Cal.Rptr. 318, 813 P.2d 1348].).) Finally, insofar as SCIF is run as a private business, the threat of punitive awards will carry its traditional effect of encouraging management to supervise and discipline errant employees.

■ SCIF's argument that we should not hold that section 11873 repealed Government Code section 818 by implication is without merit. ■ Agreed, that repeals by implication are disfavored (*California State Auto Assn.* v. *Franchise Tax Board* (1987) 191 Cal.App.3d 1253, 1261 [237 Cal.Rptr. 44]) and that such a construction must rest upon an express declaration or other firm evidence. (*Fuentes* v. *Workers' Comp. Appeals Bd.* (1976) 16 Cal.3d 1, 7 [128 Cal.Rptr. 673, 547 P.2d 449].) ■ But the argument is inapposite: the obvious, express intent of section 11873 *is* to repeal those sections of the Government Code not excepted, insofar as they affected SCIF. Our holding has nothing to do with repeal by implication; the repeal is explicit on the face of the statute.

Finally, SCIF argues that the motion to strike was properly granted in any event because Courtesy's allegations did not support a claim for punitive damages under Civil Code section 3294. It insists that Courtesy fails to allege any sufficiently "despicable" conduct.

SCIF cites *Mock* v. *Michigan Millers Mutual Ins. Co.* (1992) 4 Cal.App.4th 306 [5 Cal.Rptr.2d 594] for the purported principle that punitive damages cannot be recovered without "despicable" conduct. ■ First, we note—as did the *Mock* court—that under Civil Code section 3294, subdivisions (a) and (c), punitive damages may be based upon a finding of either malice or oppression; further, that malice includes *either* "despicable" conduct done with a conscious disregard of the rights or safety of others, *or* conduct which is actually intended to cause harm.[11] The problem in *Mock*— which reached the court on appeal after trial—was that the jury, as instructed, could have found "malice" without also finding either an intent to harm or "despicable" conduct done with a conscious disregard of the rights or safety of others.

[11]Of course, conduct which is intended to cause harm is ipso facto despicable; the statute, subdivision (c)(1) ensures that despicable conduct which is not done with a specifically harmful intent may also be punished.

In this case, we deal with pleadings rather than a jury's verdict based on arguably insufficient evidence; as against a claim of inadequacy of the pleading, we read the complaint as a whole, all parts in their context, and assuming the truth of all well-pleaded allegations. (*Phillips* v. *Desert Hospital Dist.* (1989) 49 Cal.3d 699, 702 [263 Cal.Rptr. 119, 780 P.2d 349].)

To put it concisely, Courtesy's complaint charges that SCIF has engaged in a systematic pattern of stonewalling, covering up, discrimination, and financial miscalculation, all alleged to have been done with the specific intent of maximizing SCIF's receipts (and Courtesy's premiums) while concealing the fraud from Courtesy. The allegation of specific intent is adequate as a matter of pleading to show malice, and we also think that Courtesy has sufficiently alleged conduct which is properly characterized as despicable. SCIF is not entitled to have the ruling upheld on this basis.[12]

In summary, we hold that section 11873 effectively removes SCIF from the scope of those provisions of the Government Code not specifically listed in that statute and those provisions of the Government Code which do not specifically name SCIF as an agency to which the provision applies, such as section 818. We find the result compelled by the statutory language. As the 1979 amendments to the Insurance Code demonstrate, SCIF is not without the ability effectively to sponsor legislation in its favor. If we have mistaken the intent of the Legislature, SCIF is free to seek relief. As we have discussed above, we decline to speculate in SCIF's favor where we find the language of the statute clear. Let a peremptory writ of mandate issue, directing the superior court to vacate its order granting real party's motion to strike the request for punitive damages, and to enter a new order denying said motion.

Ramirez, P. J., and Timlin J., concurred.

The petition of real party in interest for review by the Supreme Court was denied November 12, 1992. Panelli, J., was of the opinion that the petition should be granted.

---

[12]As Courtesy notes, SCIF did not challenge the adequacy of the specific allegations in its demurrer or motion to strike below. A party may present a pure issue of law to the reviewing court even if it has not been raised below; with respect to a ruling on the pleadings, we review the result and not the reasons therefor, so that the ruling will be upheld if correct on any theory. (*Carman* v. *Alvord* (1982) 31 Cal.3d 318, 324 [182 Cal.Rptr. 506, 644 P.2d 192].)

However, in this case, even if SCIF's argument had merit—which we hold it does not—we would not only have upheld the ruling, but also directed the trial court to permit Courtesy to amend its complaint to satisfy SCIF's objections. This disposition would be necessary, because it would be an abuse of discretion to deny leave to amend where the defect is presumably curable and the pleader has not been afforded a previous opportunity to do so. (*Careau & Co.* v. *Security Pacific Business Credit, Inc.* (1990) 222 Cal.App.3d 1371, 1386 [272 Cal.Rptr. 387].)