[No. B060356. Second Dist., Div. Four. June 29, 1993.]

MAXON INDUSTRIES, INC., Plaintiff and Appellant, v.
STATE COMPENSATION INSURANCE FUND, Defendant and
Respondent.

**[Opinion certified for partial publication.†]**

---

†Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of part II.

1388

## COUNSEL

Roxborough & Associates, Nicholas P. Roxborough and Esteban G. Gallegos for Plaintiff and Appellant.

Sheppard, Mullin, Richter & Hampton, Pierce T. Selwood, Andre J. Cronthall, William J. Arzbaecher III, Krimen, Bjornsen & Klein, Charles W. Savage and Barbara J. Gallios for Defendant and Respondent.

## OPINION

**EPSTEIN, J.**—Insurance Code section 11873, subdivision (a) exempts the State Compensation Insurance Fund (the Fund) from most provisions of the Government Code: "[T]he fund shall not be subject to the provisions of the Government Code made applicable to state agencies generally or collectively, unless the section specifically names the fund as an agency to which the provision applies." The California Tort Claims Act (Gov. Code, § 810 et seq.) is such a general statute. Although Insurance Code section 11873 makes several exceptions to the general exemption, there is none which brings the Fund within the Tort Claims Act. In light of Insurance Code section 11873, we conclude that the Tort Claims Act is not applicable to the Fund and reject the Fund's arguments to the contrary. In the unpublished portion of the opinion, we conclude that the trial court erred in sustaining the Fund's demurrer without leave to amend.

### FACTUAL AND PROCEDURAL SUMMARY

Maxon Industries, Inc., the appellant, obtained a workers' compensation insurance policy from Beaver Insurance Company for the period May 1987 through May 1988. Maxon then obtained a workers' compensation policy from the Fund covering the period June 1988 and June 1989. In February 1991, Maxon sued Beaver Insurance and the Fund, alleging both contract and tort causes of action. Beaver is not a party to this appeal.

The original complaint alleged that the Fund had improperly calculated premiums charged to Maxon by overestimating the reserves necessary for claims filed against Maxon and as a result of the inefficient handling of claims. The complaint alleged causes of action for: (1) breach of implied covenant of good faith and fair dealing; (2) interference with contractual relations; (3) common law fraud related to representations about the manner in which claims against Maxon would be handled; (4) negligent misrepresentation; (5) negligence; (6) accounting; (7) declaratory relief; (8) breach of contract; (9) unfair, unlawful and fraudulent business practices; and (10) common law fraud for failing to disclose an alleged policy of not allowing claims reviews by Maxon's representatives and of not dealing directly with Maxon's authorized representatives. Maxon sought an award of punitive damages on the first, second, third and tenth causes of action, an accounting, injunctive relief and restitution, general damages, costs and fees.

The Fund demurred to the complaint, challenging the sufficiency of the pleading for each cause of action and arguing that the Fund was immune from suit under the California Tort Claims Act. The Fund also moved to strike portions of the complaint related to the claims for punitive damages. Maxon opposed the demurrer and the motion to strike. The trial court sustained the demurrer as to all causes of action and granted Maxon 10 days in which to file an amended complaint. The motion to strike was taken off calendar.

Maxon filed an amended complaint alleging the same 10 causes of action. The Fund again demurred and moved to strike the punitive damages allegations, arguing that Maxon had failed to remedy the defects of the original complaint. The Fund repeated its argument that it is immune from suit in tort and challenged the sufficiency of the allegations.

This time, the trial court sustained the Fund's demurrer as to all causes of action without leave to amend, and entered judgment dismissing the complaint. Maxon filed a timely notice of appeal.

DISCUSSION

I

*Tort Immunity*

The subject of the Fund's immunity from tort liability is thoroughly treated in *Courtesy Ambulance Service* v. *Superior Court* (1992) 8 Cal.App.4th 1504 [11 Cal.Rptr.2d 161]. That decision reviews most of the

arguments made here, as well as the legislative history of Insurance Code section 11873. We agree with the reasoning and conclusions of the court in *Courtesy Ambulance* relating to this issue.

In *Courtesy Ambulance*, the court issued a writ of mandate directing the trial court to vacate its order granting the Fund's motion to strike a claim of punitive damages on the ground that it was immune from such liability under the California Tort Claims Act. ██ The *Courtesy Ambulance* court concluded that Insurance Code section 11873 excludes the Fund from the immunities in the Tort Claims Act. (8 Cal.App.4th at p. 1514.)[1] The court pointed out that Insurance Code section 11873 is clear in this regard and does not require construction or interpretation. The Fund argues that if this is so, the plain language of the statute leads to an absurd result which ought to be avoided. ██ There are rare cases in which statutes have been construed against their plain meaning to avoid an absurd result. When this is done, however, it generally is in a context in which the Legislature's intent to avoid the result is apparent. (See *People* v. *King* (1993) 5 Cal.4th 59, 69 [19 Cal.Rptr.2d 233, 851 P.2d 27] ["[l]iteral construction should not prevail if it is contrary to the legislative intent apparent in the statute."].)

██ That doctrine does not assist the Fund in this case for two reasons. First, it is not supported by the legislative history of the statute. The Fund's position about its liability in tort has not been consistent. In 1979, when the Fund sponsored the legislation which enacted Insurance Code section 11873, it advised the Legislature that the statute would exempt the Fund from the California Tort Claims Act. (See *Courtesy Ambulance Service* v. *Superior*

---

[1] While we agree with the holding of *Courtesy Ambulance*, that the Fund may not claim the immunities codified in the California Tort Claims Act, we do not endorse that court's conclusion that the Fund is subject to an award of punitive damages. (8 Cal.App.4th at p. 1519.) In distinguishing *McAllister* v. *South Coast Air Quality etc. Dist.* (1986) 183 Cal.App.3d 653 [228 Cal.Rptr. 351] on the punitive damages issue, the *Courtesy Ambulance* court observed: "[T]he statutory immunity has been abrogated and it would be absurd to hold that the Legislature removed an express statutory immunity with the intent that it be replaced by a common law immunity. The effect of the 1979 amendments to the Insurance Code was to limit the extent to which [the Fund] was to be treated as a public entity; once the statutory immunity was lifted, there is no logical justification for replacing it with any other." (8 Cal.App.4th at p. 1517.) The common law doctrine of sovereign immunity was abrogated in *Muskopf* v. *Corning Hospital Dist.* (1961) 55 Cal.2d 211, 221 [11 Cal.Rptr. 89, 359 P.2d 457]. The question of punitive damages was not discussed in *Muskopf*, and it presents somewhat different issues. The previous common law in California and in other states was that punitive damages could not be imposed against public entities absent a statute that clearly subjected the entity to such liability. (See *City of Salinas* v. *Souza & McCue* (1967) 66 Cal.2d 217, 227-228 [57 Cal.Rptr. 337, 424 P.2d 921]; *McAllister* v. *South Coast Air Quality etc. Dist.*, *supra*, 183 Cal.App.3d at pp. 656-657.) We need not and do not decide this issue since it was not briefed by the parties and is not necessary to the principal issue we do decide with respect to application of the Tort Claims Act to the Fund.

*Court, supra,* 8 Cal.App.4th at p. 1515.) As the court in *Courtesy Ambulance* observed: "[N]othing in the materials before us suggests that [the Fund] took the paradoxical position that it nevertheless desired to confirm that it *was* covered by the substantive provisions of the law." (*Ibid.,* italics in original.) It is apparent that the Fund sought to cast itself as a private enterprise rather than a public entity when it sponsored the 1979 legislation. It should be treated that way, receiving both the benefits and the disadvantages of that status.

Second, applying Insurance Code section 11873 according to its terms does not lead to an "absurd" result. To the contrary, it places the Fund in the same position as other insurers, a position the Fund itself was at pains to urge upon the Legislature and others, and which finds support from the very beginning of the workers' compensation system in this state. (See *Courtesy Ambulance Service* v. *Superior Court, supra,* 8 Cal.App.4th at pp. 1511-1513, 1515, fn. 8.)

Based on the language of Insurance Code section 11873, the Fund argued in *Courtesy Ambulance* and argues here that "it is not *subject* to an immunity, but is rather *protected* by it, . . ." (8 Cal.App.4th at p. 1516.) The *Courtesy Ambulance* court rejected this argument, concluding: "[W]e cannot, without more support, attribute to the Legislature such semantic distinctions, . . ." (*Ibid.*) We agree.

The Fund also argues that it is entitled to immunity because Government Code section 815 specifies that "public entities shall not be subject to any tort liability absent a statute" that specifically sets forth liability. Applying the same reasoning, the Fund invokes the immunity of a public entity for the discretionary acts of its employees under Government Code sections 815.2 and 820.2.

The Fund certainly is a "public entity." (See Gov. Code, § 810.) The problem is that the entire act is made up of "provisions of the Government Code made applicable to state agencies generally or collectively." As such, under Insurance Code section 11873, it has no application to the Fund absent a specific provision naming the Fund. There is no such provision.

The Fund makes one further argument, not discussed in *Courtesy Ambulance.* In sustaining the demurrer without leave to amend, the trial court ruled that the Fund is immune from tort liability under principles of sovereign immunity, citing *Rauschan* v. *State Comp. Ins. Fund* (1927) 80 Cal.App. 754 [253 P. 173]. The Fund argues that *Rauschan* is still good law. We conclude that *Rauschan* has no continuing vitality.

The Fund was created as part of a "comprehensive scheme for workers' compensation" enacted in 1913, which made workers' compensation compulsory. (*State Comp. Ins. Fund* v. *McConnell* (1956) 46 Cal.2d 330, 345 [294 P.2d 440].)

In 1927, the *Rauschan* court ruled that demurrers to a defamation complaint against the Fund were properly sustained under principles of sovereign immunity. (80 Cal.App. at p. 760.) The appellant in *Rauschan* put forward two reasons in support of his argument that the Fund was not immune. First, he argued that statutory language which allowed the Fund to sue and be sued abrogated sovereign immunity. Second, he asserted that the Fund should not be immune because it was performing a proprietary, rather than a governmental, function.

The *Rauschan* appellant's first argument, that sovereign immunity had been waived, was based on section 38, subdivision (b) of the Workmen's Compensation, Insurance and Safety Act (Stats. 1913, ch. 176, § 38, pp. 300-301), which then provided that the "Industrial Accident Commission may 'sue and be sued in all the courts of the state in all actions arising out of any act, deed, matter or thing made, omitted, entered into, done, or suffered in connection with the State Compensation Insurance Fund, the administration, management or conduct of the business or affairs relating thereto.'" (80 Cal.App. at p. 761.)

The *Rauschan* court rejected this argument, ruling that the Legislature intended section 38, subdivision (b) of the Workmen's Compensation, Insurance and Safety Act to allow the Fund a remedy, not to create a liability. (80 Cal.App. at p. 761.) The Fund relies on similar language in section 11783 of the Insurance Code, which now provides: "The State Compensation Insurance Fund may: [¶] (a) Sue and be sued in all actions arising out of any act or omission in connection with its business or affairs." If this were the only language pertinent to the issue, we would agree with the Fund's argument based on *Rauschan*. As we have seen, the language of Insurance Code section 11873, added long after the *Rauschan* decision, undermines the continued vitality of that decision by expressly exempting the Fund from provisions of the Government Code, including those which codify the immunities granted public entities.

Second, the *Rauschan* appellant argued that the Fund was exercising proprietary rather than governmental powers, and therefore was not entitled to sovereign immunity. (80 Cal.App. at p. 761.) The court rejected that argument, finding no precedent for a waiver of sovereign immunity where

proprietary powers are exercised by a governmental agency. (*Id.* at pp. 765-768.) That holding was later disapproved in *People* v. *Superior Court* (1947) 29 Cal.2d 754 [178 P.2d 1, 40 A.L.R.2d 919], which recognized a proprietary-governmental function dichotomy: "[W]here the state engages in industrial or business enterprises, as distinguished from purely governmental activities, tort liability attaches and may be adjudicated pursuant to the consent statute. Insofar as the decision in *Rauschan* v. *State Comp. Ins. Fund,* *supra* (80 Cal.App. 754), is not in harmony with the conclusion herein, it is disapproved." (*Id.* at p. 762; see also *Guidi* v. *State of California* (1953) 41 Cal.2d 623, 625-626 [262 P.2d 3] [no tort immunity for the fireworks display which caused a horse to trample plaintiff at state fair: "Governmental immunity . . . turns on the nature of the particular activity that leads to the plaintiff's injury, not on the identity of the governmental subdivision or agency carrying on the activity, . . ."]; *Schwerdtfeger* v. *State of California* (1957) 148 Cal.App.2d 335, 343 [306 P.2d 960] [no tort immunity for operation of pier on San Francisco waterfront where state was competing with private piers in Oakland].)

■ The Fund argues that these cases do not establish the proprietary nature of its activities. As the legislative histories and statutory pattern summarized in *Courtesy Ambulance* make clear, the Legislature has established the Fund as a proprietary enterprise. (8 Cal.App.4th at pp. 1511-1512.)

More fundamentally, the significance of a distinction between proprietary and governmental activities with respect to tort liability was essentially abrogated in *Muskopf* v. *Corning Hospital Dist., supra,* 55 Cal.2d 211 and by subsequent enactment of the California Tort Claims Act. (See *Elson* v. *Public Utilities Commission* (1975) 51 Cal.App.3d 577, 582-585 [124 Cal.Rptr. 305].) That act provides that a public entity is not liable for any tort except as provided by statute. (Gov. Code, § 815; *Peterson* v. *San Francisco Community College Dist.* (1984) 36 Cal.3d 799, 809 [205 Cal.Rptr. 842, 685 P.2d 1193].) As we have discussed, section 11873 is such a statutory exception to tort immunity.

II*

*Sufficiency of the First Amended Complaint*

.  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .

*See footnote, *ante,* page 1387.

## DISPOSITION

The judgment of dismissal is reversed with directions to sustain the demurrer to the first amended complaint with leave to amend. Maxon is to have its costs on appeal.

Woods (A. M.), P. J., and Hoffman, J.,* concurred.

---

*Judge of the Municipal Court for the Los Angeles Judicial District sitting under assignment by the Chairperson of the Judicial Council.