Filed 9/16/21

CERTIFIED FOR PUBLICATION

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| X.M., a Minor, etc., | |
| Petitioner, | E076340 |
| v. | (Super.Ct.No. CIVDS1907602) |
| THE SUPERIOR COURT OF SAN BERNARDINO COUNTY, | OPINION |
| Respondent; | |
| HESPERIA UNIFIED SCHOOL DISTRICT, | |
| Real Party in Interest. | |

ORIGINAL PROCEEDING; petition for writ of mandate from an order of the Superior Court of San Bernardino County. Gilbert G. Ochoa, Judge. Petition denied.

Manly, Stewart & Finaldi and Taylor Rayfield; Esner, Chang & Boyer, Holly N. Boyer, and Kevin K. Nguyen, for Petitioner.

No appearance by Respondent.

Cummings, McClorey, Davis, Acho, & Associates and Ryan D. Miller for Real Party in Interest.

1

Though the underlying complaint in this writ proceeding contains disturbing allegations of sexual molestation of elementary school students and school officials turning a blind eye to that abuse, the truth of the allegations is not at issue. The question we must decide is purely legal: Does the sovereign immunity in Government Code section 818 (section 818), which shields public agencies from "damages imposed primarily for the sake of example and by way of punishing the defendant," apply to bar a victim of childhood sexual assault from recovering "up to treble damages" under Code of Civil Procedure section 340.1 (section 340.1) if their assault was the result of a cover up of a prior sexual assault against a child?

In this case, X.M., a student at Maple Elementary School, sued Hesperia Unified School District (HUSD), claiming he was sexually assaulted on campus by one of their employees. He sought treble damages under section 340.1, alleging his assault resulted from HUSD's cover up of a prior sexual assault by the same employee. The trial court granted the school district's motion to strike the increased damages request on the ground that treble damages under section 340.1 are primarily punitive and therefore barred by section 818.

X.M. filed a petition for writ of mandate asking us to vacate the trial court's order and conclude section 818's immunity does not apply to the treble damages provision at issue here. He argues the primary purpose of the provision is to compensate victims of childhood sexual assault for the additional harm caused by discovering their abuse could have been prevented if those entrusted with their care had responded differently to prior

2

sexual assaults on their watch. In the alternative, he argues the provision's primary purpose is to incentivize victims to come forward and file lawsuits.

We conclude the primary purpose of section 340.1's treble damages provision is punitive because it was designed to deter future cover ups by punishing past ones. As we'll explain, the economic and noneconomic damages available under general tort principles are already designed to make childhood sexual assault victims whole—both for the physical and emotional harm from the abuse itself, as well as for any additional emotional harm from learning the abuse was the result of a cover up. It is the rare treble damages provision that isn't primarily designed to punish and deter misconduct, and nothing in section 340.1 or its legislative history convinces us the Legislature intended the increased award to be more compensatory (or incentivizing) than deterrent. In reaching this conclusion, we join our colleagues in Division Three of the Second District and hold that section 818's immunity applies when the defendant is a public agency like HUSD. (*Los Angeles Unified School Dist. v. Superior Court of Los Angeles County* (2021) 64 Cal.App.5th 549, 552 (*LAUSD*).) We therefore deny the petition.

## I

## FACTS

In March 2019, X.M. sued HUSD and Pedro Martinez, a janitor at Maple Elementary School, where X.M. was a first grader at the time of the alleged abuse. X.M. claims that on multiple occasions during the fall of 2018, Martinez sexually molested him in campus bathrooms and classrooms during school hours. X.M.'s complaint also alleges

3

the abuse could have been avoided had HUSD not covered up prior reports of sexual assault against Martinez or ignored evidence that its sexual harassment policies were deficient.

According to the complaint, Martinez would lure X.M. and other young students into empty classrooms with sweets and videos in an effort to get them to sit on his lap and engage in sexually inappropriate conduct. HUSD employees were aware this was going on but failed to properly supervise Martinez. The complaint further alleges HUSD employees knew Martinez had been accused of molesting another first grade student two years earlier, in 2016. When the student's parents told school officials that their daughter said Martinez had assaulted her in the bathroom, the officials responded that children tend to make up these types of stories to get out of going to class. They also called Martinez into the principal's office where he denied the allegations in front of the student and her parents. According to the complaint, the officials did not document the incident, take any disciplinary action against Martinez, or make changes to the school's sexual harassment policies. In a similar vein, the complaint alleges HUSD was aware that in June 2018, shortly before X.M. was assaulted, a San Bernardino County Grand Jury investigated complaints of molestation occurring within the district and issued a written report concluding HUSD's sexual harassment policies and procedures were insufficient to protect students from sexual abuse.

X.M.'s complaint asserts a claim of negligence against HUSD and Martinez, and a claim of assault and battery against Martinez. He seeks economic and noneconomic

4

damages against HUSD and Martinez, as well as treble damages against HUSD. As noted, the trial court granted HUSD's motion to strike the increased damage request, concluding treble damages under section 340.1 are primarily punitive and thus may not be imposed against a public school district under section 818. X.M. filed this petition for writ of mandate, and we issued an order to show cause.

## II

## ANALYSIS

### A.  *Standard of Review*

Because the trial court's ruling on the motion to strike rests on the interpretation of two statutory provisions, we review the ruling de novo. (*Abbott Laboratories v. Superior Court of Orange County* (2020) 9 Cal.5th 642, 651.) Our task when interpreting statutes is to discern the Legislature's intent "so as to effectuate the purpose of the law." (*DuBois v. Workers' Comp. Appeals Bd.* (1993) 5 Cal.4th 382, 387.) "The statutory language itself is the most reliable indicator, so we start with the statute's words, assigning them their usual and ordinary meanings, and construing them in context. If the words themselves are not ambiguous, we presume the Legislature meant what it said, and the statute's plain meaning governs. On the other hand, if the language allows more than one reasonable construction, we may look to such aids as the legislative history of the measure and maxims of statutory construction. In cases of uncertain meaning, we may also consider the consequences of a particular interpretation, including its impact on public policy." (*Wells v. One2One Learning Foundation* (2006) 39 Cal.4th 1164, 1190 (*Wells*).)

5

B.    *Section 818 Applies to Damages that Are Primarily Punitive*

Section 818, enacted as part of the 1963 Government Tort Claims Act, provides: "Notwithstanding any other provision of law, a public entity is not liable for damages awarded under Section 3294 of the Civil Code or other damages imposed *primarily* for the sake of example and by way of punishing the defendant."[1] (Italics added.) Thus, whether statutory sovereign immunity applies to a particular damage provision depends on the provision's primary purpose. (*McAllister v. South Coast Air Quality Etc. Dist.* (1986) 183 Cal.App.3d 653, 656.)

"The purpose of punitive damages is to punish wrongdoers and thereby deter the commission of wrongful acts." (*Neal v. Farmers Ins. Exchange* (1978) 21 Cal.3d 910, 928, fn. 13.) The hallmarks of punitive damages are that they require proof of misconduct and are entirely discretionary. In other words, once the fact finder determines punitive damages are authorized, they must then decide not only whether to award such damages, but also what amount will be sufficient to punish the defendant and prevent future misconduct. (See *Los Angeles County Metropolitan Transportation Authority v. Superior Court* (2004) 123 Cal.App.4th 261, 276 (*LACTMA*) [comparing punitive damages to other kinds of penalties].) This latter decision entails a weighing of defendant-specific factors, such as their wealth and the reprehensibility of their conduct. (See, e.g., *Neal*, at p. 928, fn. 13 ["the function of deterrence . . . will not be served if the wealth of the defendant allows him to absorb the award with little or no discomfort"].)

---

[1] Civil Code section 3294 authorizes punitive damages in noncontract cases where "the defendant has been guilty of oppression, fraud, or malice."

6

The rationale behind section 818's immunity is that the twin goals of punitive damages—retribution and deterrence—are not actually advanced if the defendant is a public agency and the tort is committed by an individual employee. As the United States Supreme Court explained: "Under ordinary principles of retribution, it is the wrongdoer himself who is made to suffer for his unlawful conduct. . . . A municipality, however, can have no malice independent of the malice of its officials. Damages awarded for *punitive* purposes, therefore, are not sensibly assessed against the governmental entity itself." (*Newport v. Fact Concerts, Inc.* (1981) 453 U.S. 247, 267.) Rather, "an award of punitive damages against a municipality 'punishes' only the taxpayers, who took no part in the commission of the tort. These damages are assessed over and above the amount necessary to compensate the injured party. . . . [P]unitive damages imposed on a municipality are in effect a windfall to a fully compensated plaintiff, and are likely accompanied by an increase in taxes or a reduction of public services for the citizens footing the bill. Neither reason nor justice suggests that such retribution should be visited upon the shoulders of blameless or unknowing taxpayers." (*Ibid.*) As for discouraging future misconduct, "it is far from clear that municipal officials, including those at the policymaking level, would be deterred from wrongdoing by the knowledge that large punitive awards could be assessed based on the wealth of their municipality. Indemnification may not be available to the municipality under local law, and even if it were, officials likely will not be able themselves to pay such sizable awards." (*Id.* at p. 268.)

Consistent with this rationale, section 818 protects a public agency's "tax-funded revenues from legal judgments in amounts beyond those strictly necessary to recompense the injured party." (*Wells*, *supra*, 39 Cal.4th 1164, 1196, fn. 20.) Thus, if a complaint seeks damages that are primarily punitive (that is, retributive or deterrent in nature) against a public agency defendant, section 818 requires the trial court "to strike those portions of the complaint." (*McAllister v. South Coast Air Quality Etc. Dist.*, *supra*, 183 Cal.App.3d at p. 656.)

C.     *Treble Damages Are Generally, But Not Always, Punitive*

"While the tipping point between pay-back and punishment defies general formulation [and is] dependent on the workings of a particular statute" (*Cook County v. United States ex rel. Chandler* (2003) 538 U.S. 119, 130), treble damages are, in the vast majority of contexts, regarded as a primarily punitive form of damages. (See, e.g., *Imperial Merchant Services, Inc. v. Hunt* (2009) 47 Cal.4th 381, 394 ["Treble damages are punitive in nature"]; *Circle Oaks Sales Co. v. Smith* (1971) 16 Cal.App.3d 682, 684-685 ["a treble damages award is punitive in nature, imposed as punishment against the defendant, rather than compensation to the plaintiff"].) This is because treble damages are three times compensatory (or actual) damages, which are themselves designed to make a plaintiff whole or put them in the position they would be in had the injury not occurred. Thus, treble damages are, by definition, "in addition to actual damages and beyond the equivalent of harm done." (*State Dept. of Corrections v. Workmen's Comp. App. Bd.* (1971) 5 Cal.3d 885, 891 (*State Dept. of Corrections*).) "The very idea of treble damages

8

reveals an intent to punish past, and to deter future, unlawful conduct, not to ameliorate the liability of wrongdoers." (*Texas Industries, Inc. v. Radcliff Materials, Inc.* (1981) 451 U.S. 630, 639.) For this reason, the United States Supreme Court held that the 1986 amendment to the False Claims Act—which increased damages from double to treble— turned what had previously been a "remedial" provision into an "essentially punitive" one, and as a result, a state could not be considered a "person" subject to the act. (*Vermont Agency of Natural Resources v. United States ex rel. Stevens* (2000) 529 U.S. 765, 784 (*Stevens*).)[2]

Similarly, in *Harris v. Capital Growth Investors XIV* (1991) 52 Cal.3d 1142, our Supreme Court observed the treble damages provision in the Unruh Civil Rights Act (Civ. Code, §§ 51, 52), which applies to willful discrimination, "reveals a desire to punish intentional and morally offensive conduct." (*Harris*, at p. 1172.) Based on this observation, federal courts have uniformly held that section 818 immunizes public agencies from treble damages under the Unruh Act. (E.g., *M.J. ex rel. G.J. v. Clovis*

---

[2] We note that in *Cook County v. United States ex rel. Chandler*, *supra*, 538 U.S. 119, the Court held that, unlike a state, a municipal corporation qualifies as a "person" under the False Claims Act because the definition of "person" when the act was first passed in 1863 included both private and municipal corporations. (*Cook County*, at p. 134.) In so concluding, the Court rejected the argument that by amending the act to authorize treble damages the Legislature intended to repeal this longstanding definition of person. The Court also noted the act's treble damages bore some "compensatory traits." (*Cook County*, at p. 130.) But the Court did not conclude those compensatory traits outweighed the punitive aspects of the damages, nor did it depart from its holding in *Stevens* that the act's treble damages are "essentially punitive." (*Stevens*, *supra*, 529 U.S. at p. 784; see also *PacifiCare Health Sys., Inc. v. Book* (2003) 538 U.S. 401, 405 [recognizing its characterization of "the treble-damages provision of the False Claims Act . . . as 'essentially punitive in nature'"].)

*Unified School Dist.* (E.D. Cal., Apr. 3, 2007, No. 1:05-CV-00927 OWW) 2007 WL 1033444, at *13; *Jefferson v. City of Fremont* (N.D. Cal., Apr. 30, 2012, No. C-12-0926 EMC) 2012 WL 1534913, at *7; *W.V. v. Whittier Union High Sch. Dist.* (C.D. Cal., Oct. 20, 2016, No. CV 16-6495-DMG (SKx) 2016 WL 11520809, at *6; *Archibald v. County of San Bernardino* (C.D. Cal., May 10, 2018, No. ED CV 16-01128-AB (SPx) 2018 WL 8949779, at *1.)

The other instances of punitive treble damages provisions are too numerous to recount here. As Justice Brown observed in her concurring opinion in *Lane v. Hughes Aircraft Co.* (2000) 22 Cal.4th 405, "[i]n more than 30 instances, the Legislature has provided for double or treble damages as a punishment for wrongful acts." (*Id.* at p. 425.) Suffice it to say, treble damages will be considered punitive when they apply to intentional misconduct or morally offensive behavior, and the Legislature has not clearly indicated an additional, compensatory purpose. (See, e.g., *Swall v. Anderson* (1943) 60 Cal.App.2d 825, 828 [concluding the punitive damage provision in the statute prohibiting timber removal "must be treated as penal and punitive" because it applies to "wrongful" removal of trees whereas only actual damages were available for good faith or "involuntary" removal].)

We are aware of only two contexts in which treble damages have been found to serve a primarily compensatory purpose, and both involve complex federal laws with private citizen enforcement provisions. The statutes governing antitrust and organized crime (RICO) contain provisions authorizing treble damages for plaintiffs who can prove

10

they were injured from a violation of these laws. The United States Supreme Court has acknowledged the important punitive and deterrent functions these treble damages provisions serve. (See, e.g., *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.* (1985) 473 U.S. 614, 635 [treble damages encourage private citizens to incur the cost and difficulty of suit and as such are "a chief tool in the antitrust enforcement scheme, posing a crucial deterrent to potential violators"].) But because the legislative history of those provisions makes emphatically clear that they were enacted to "counterbalance[e] 'the difficulty of maintaining a private suit'" in these two areas—where both violations and damages can be difficult to prove—the Supreme Court has concluded their *primary* function is compensatory. (*Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.* (1977) 429 U.S. 477, 486, fn. 10; see also *Agency Holding Corp. v. Malley-Duff & Associates, Inc.* (1987) 483 U.S. 143, 151 ["Both RICO and the Clayton Act are designed to remedy economic injury by providing for the recovery of treble damages, costs, and attorney's fees"]; *Lehrman v. Gulf Oil Corp.* (5th Cir.1974) 500 F.2d 659, 667, fn. 36 [treble damages help fully compensate a plaintiff as "an antitrust violation often involves numerous intangible economic harms"].)

We now turn to the treble damages provision at issue here.

D.      *Section 340.1's Treble Damages Are Primarily Punitive*

Section 340.1 establishes a liberalized statute of limitations for actions to recover damages caused by childhood sexual assault brought against direct perpetrators of the abuse, as well as third party defendants directly or vicariously responsible for the abuse.

11

(*Quarry v. Doe I* (2012) 53 Cal.4th 945, 952.) Since its enactment in 1986, section 340.1 has been continually amended to minimize procedural limitations for victims of childhood sexual assault. (*Quarry*, at p. 952.) Most recently, in 2019, the Legislature passed Assembly Bill No. 218 (A.B. 218), which amended section 340.1 to extend the statute of limitations for childhood sexual assault by 14 years, revive time-barred claims for three years, and eliminate the shortened limitations period for claims against public agencies. (See Assem. Bill No. 218 (2019-2020 Reg. Sess.) § 1; Assem. Floor Analysis, analysis of Assem. Bill No. 218 (2019-2020 Reg. Sess.) as amended Aug. 30, 2019, p. 2.)

A.B. 218 also added the provision at issue here, which authorizes an award of up to treble damages when a defendant's cover up of a minor's sexual assault has resulted in the subsequent sexual assault of the plaintiff. (Assem. Bill No. 218, *supra*, § 1.) That provision states: "In an action [for damages suffered as a result of childhood sexual assault], a person who is sexually assaulted and proves it was as the result of a cover up may recover up to treble damages against a defendant who is found to have covered up the sexual assault of a minor, *unless prohibited by another law*." (Code Civ. Proc., § 340.1, subd. (b)(1), italics added.) The last clause of this provision is an exception clause; it recognizes that treble damages may not be available in every circumstance, depending on the operation of other laws.

Though section 340.1 is silent as to the purpose of the increased damage award it authorizes, X.M. rightly acknowledges the provision has a punitive aspect (as all treble damages provisions do). The question is, does the provision aim primarily at punishment

12

and deterrence or at compensation? In other words, is section 818 "another law" that prohibits treble damages, thus triggering section 340.1's exception clause?

Starting with the text of the statute, we note that section 340.1's treble damages provision bears the hallmarks of punitive damages. First, the statute authorizes treble damages only upon proof of morally offensive behavior on behalf of the defendant. A plaintiff receives actual (that is, economic and noneconomic) damages if they prove they were the victim of childhood sexual assault. But the statute authorizes an award of three times their actual damages if they can also prove their assault was the result of the defendant's cover up of a previous sexual assault of a child. (§ 340.1, subd. (b)(1).) Second, even if the plaintiff presents the requisite proof, the decision to increase the damage award beyond actual damages lies entirely with the fact finder. And third, if the fact finder does decide to increase the damage award, the amount by which it does so, though capped, is not fixed. As a result, the fact finder is free to increase the damage award up to three times the plaintiff's actual damages based on factors specific to the defendant. (See *LACTMA*, *supra*, 123 Cal.App.4th at p. 276 [comparing punitive damages to other kinds of penalties]; *Neal v. Farmers Ins. Exchange*, *supra*, 21 Cal.3d at p. 928, fn. 13 [setting out relevant factors for fashioning a punitive damage award].) Thus, while the statutory text does not provide an explicit answer to our question, these common punitive traits indicate that the primary purpose of section 340.1's increased damage award is retribution and deterrence. In contrast, we see nothing in the statutory text to indicate compensation is the provision's primary function.

Such an indication, X.M. argues, can be found in A.B. 218's legislative history.[3] X.M. contends the bill's author made it clear that compensation is the primary purpose behind the treble damages provision in her statement to the Assembly about the function and purpose behind the bill's two major reforms—expanded limitations periods and treble damages. The author states: "AB 218 would expand access to justice for victims of childhood sexual assault by removing the arbitrary time limits upon victims to pursue a case. . . . There should not be a reasonable expectation that if simply enough time passes, there will be no accountability for these despicable past acts by individuals and entities. . . . [¶] AB 218 would also confront the pervasive problem of cover ups in institutions, from schools to sports league[s], which result in continuing victimization and the sexual assault of additional children. The bill would allow for recovery of up to treble damages from the defendant who covered up sexual assault. *This reform is clearly needed both to compensate victims who never should have been victims—and would not have been if past sexual assault had been properly brought to light—and also as an effective deterrent against individuals and entities who have chosen to protect the perpetrators of sexual assault over the victims.*" (Assem. Floor Analysis, analysis of Assem. Bill No. 218, *supra*, as amended Aug. 30, 2019, p. 2, italics added.)

---

[3] We grant X.M.'s request to take judicial notice of the bill history for A.B. 218, as well as the Fact Sheet prepared by the office of the bill's author. (Evid. Code, § 452, subd. (c) [records of official acts of the Legislature are proper subjects of judicial notice]; see also *Carter v. California Dept. of Veterans Affairs* (2006) 38 Cal.4th 914, 928, [taking judicial notice of bill author's Fact Sheet].) But we deny the request with respect to the news articles as they cannot be used to establish the truth of the matter asserted and are, in any event, irrelevant to our inquiry. (See *Doe v. City of Los Angeles* (2007) 42 Cal.4th 531, 544, fn. 4.)

We don't think this statement provides as a clear an indication about the provision's main function as X.M. does. In our view, one could reasonably interpret the part about a compensatory purpose as referring to the expanded limitation periods, not the treble damages provision. Under such a reading, the author is identifying the purpose behind each reform, in the order she discussed them. The extended deadlines are compensatory because they ensure more victims have their day in court, whereas the treble damages provision is punitive because the potential of an increased award incentivizes more victims to come forward and sue those engaging in cover ups, thereby deterring such conduct. This interpretation is supported by the description of A.B. 218 immediately preceding the author's statement in the final Assembly Floor Analysis of the legislation: "In an effort to allow *more victims* of childhood sexual assault t*o be compensated for their injuries* and, to help prevent future assaults by raising the costs for this abuse, this bill *extends the civil statute of limitations for childhood sexual assault by 14 years, revives old claims for three years, and eliminates existing limitations for claims against public institutions*." (Assem. Floor Analysis, analysis of Assem. Bill No. 218, *supra*, as amended Aug. 30, 2019, p. 2, italics added.)

But we acknowledge that X.M.'s interpretation is just as reasonable. The author could be referring to *both* reforms when she says A.B. 218 is intended to "compensate victims who never should have been victims." The problem with X.M.'s argument is that even if compensation is an intended purpose of the treble damages provision, nothing indicates it is the *primary* one. Additionally, nothing in the legislative history materials

15

that X.M. asked us to review identifies *which* injuries treble damages are needed to compensate that actual damages do not already cover. This makes it even more difficult to conclude that compensation is the primary purpose.

As the court explained in *LAUSD*, the law is already designed to fully compensate victims of childhood sexual assault through economic and noneconomic actual damages: "'The general rule of damages in tort is that the injured party may recover for *all detriment* caused whether it could have been anticipated or not. [Citations.] In accordance with the general rule, it is settled in this state that *mental suffering* constitutes an aggravation of damages when it naturally ensues from the act complained of, and in this connection mental suffering includes nervousness, grief, anxiety, worry, shock, humiliation and indignity as well as physical pain.'" (*LAUSD*, *supra*, 64 Cal.App.5th at p. 561.) "It will no doubt be the case in some horrific instances that the victim of a childhood sexual assault will suffer additional psychological trauma upon learning those charged with his or her care and protection in effect facilitated the assault by aiding its perpetrator in a deliberate cover up of past sexual abuse. However, while the manifestations of this trauma may be largely subjective, damages to compensate for it are by no means unquantifiable, nor are they unavailable to the victim under normal tort damages principles." (*Ibid.*) "Punitive damages are dissimilar to pain and suffering and other compensatory damages." (*Marron v. Superior Court* (2003) 108 Cal.App.4th 1049, 1060.) "[P]ain and suffering is a genuine detriment that requires compensation. . . . [I]t has served as a convenient label under which a plaintiff may recover not only for physical

16

pain but [also] for fright, nervousness, grief, anxiety, worry, mortification, shock, humiliation, indignity, embarrassment, apprehension, terror or ordeal." (*Ibid.*)

Like the legislative history of A.B. 218, X.M. also does not identify an injury caused by an intentional cover up that actual damages would not cover. Instead, he compares the treble damages in section 340.1 to other circumstances where an increased damage award was considered compensatory. But we find the comparisons inapt. In *State Dept. of Corrections*, our Supreme Court held that Government Code section 818 did not apply to Labor Code section 4553, which increases the amount of recoverable workers' compensation by 50 percent where the employee's injury was caused by the employer's serious and willful misconduct. (*State Dept. of Corrections*, *supra*, 5 Cal.3d at p. 891.) The court acknowledged that although the multiplier has a punitive aspect in that it makes the employer "pay a higher amount of compensation by reason of his serious and wilful misconduct"), its primary purpose was "to provide more nearly full compensation to an injured employee." (*Id.* at pp. 889-890.)

However, this conclusion was based on the specific realities of our workers' compensation scheme, which was intentionally designed to provide less than full compensation. As the court explained, the schedule of compensation established in the workers' compensation act is "'not considered to be full and complete compensation'" for the injuries sustained because the "'risk of actual injuries'" under the system is "'shared by employer and employee.'" (*State Dept. of Corrections*, *supra*, 5 Cal.3d at p. 889.) As a result, "'the additional allowance [for injuries caused by willful misconduct]

17

is really for additional compensation,'" not retribution or deterrence. (*Ibid.*) But unlike workers' compensation, tort damages are designed to make a plaintiff whole.

In *People ex rel. Younger v. Superior Court* (1976) 16 Cal.3d 30 (*Younger*), our Supreme Court concluded section 818 did not apply to penalties for oil spills in civil enforcement actions under the Water Code. But again, this conclusion was based on the unique circumstances of the harm at issue and the purpose of the statute. The court acknowledged the civil penalty was partially punitive because it sought to deter oil spills but concluded the penalty also fulfilled "legitimate compensatory functions" because the harm caused by an oil spill is "by its very nature unquantifiable" and the penalty proceeds went into a cleanup fund. (*Younger*, at pp. 37, 39.)

In *Helfend v. Southern Cal. Rapid Transit Dist.* (1970) 2 Cal.3d 1, our high court held that sovereign immunity doesn't apply to the collateral source rule, which allows a plaintiff to recover full damages from the defendant who caused their injury even if they have also received proceeds from their insurance provider. This is because, in such situations, the proceeds are not a windfall to the plaintiff but rather a form of payback for the amounts they spent on premiums. (*Id.* at pp. 9-10.) This holding is specific to the insurance context and does not apply here.

Finally, relying on *Kizer v. County of San Mateo* (1991) 53 Cal.3d 139 and *Los Angeles County Metropolitan Transportation Authority v. Superior Court* (2004) 123 Cal.App.4th 261, 269 (*LACMTA*), X.M. argues section 818 does not apply to damages designed to incentivize lawsuits where the applicable statutory scheme promotes an

18

important public policy. He argues section 340.1's treble damages provision falls under this category because it was designed to "encourage[] victims to come forward to end the pattern of abuse, thereby protecting other children in the community from future abuse."

The problem with this argument is twofold. First, even if there *were* some indication in the statutory text or legislative history that the treble damages provision was enacted for this incentivizing purpose, there's nothing to suggest that purpose is more prevalent than the provision's punitive and exemplary purpose. In other words (and as was the case with the compensatory purpose), we cannot conclude an incentivizing purpose is the provision's *primary* purpose, which is what section 818 plainly requires in tort actions. (See § 818 [immunizing public agencies from "damages imposed primarily for the sake of example and by way of punish[ment]"].)[4]

Second, the civil penalties in *Kizer* and *LACMTA* are easily distinguishable from the treble damages at issue here. While the *Kizer* court did hold that public entities could be subject to penalties designed to ensure compliance with a statutory scheme, its reason for doing so had nothing to do with section 818. *Kizer* involved civil penalties under the

---

[4] We recognize that in *Younger* our Supreme Court upheld the oil spill penalty on the ground the penalty was not "solely" punitive (that is, it also served a "legitimate compensatory function[]." (*Younger*, *supra*, 16 Cal.3d at p. 37.) But it makes sense, in that context, to ask whether the penalty served *any* compensatory function because actual damages are not available in civil enforcement actions under the Water Code. But where, as here, the focus is an increased damage provision in a tort action where compensatory damages are available, we think the proper inquiry is the provision's "primary" purpose. (See, e.g., *State Dept. of Corrections*, *supra*, 5 Cal.3d at pp. 890-891 [concluding that section 818's immunity did not apply to the damage multiplier in the workers' compensation statute because the multiplier was not "designed *primarily* to punish the defendant rather than to more adequately compensate the plaintiff"], italics added.)

19

Long-Term Care, Health, Safety, and Security Act of 1973 (Health & Saf. Code, § 1417 et seq.), a statute establishing health and safety standards for care facilities to protect and prevent injury to patients. (*Kizer v. County of San Mateo*, *supra*, 53 Cal.3d at p. 146.) Recognizing that the penalties were punitive (because they are designed to encourage compliance with those standards and "deter conduct which may endanger the well-being of patients"), the court concluded section 818 was nevertheless *inapplicable* because actions brought under the Long-Term Care, Health, Safety, and Security Act are not tort actions and therefore are not governed by the Tort Claims Act or section 818. (*Kizer*, at pp. 145-146, 150.) "Section 818 was not intended to proscribe *all punitive sanctions*. Instead, the section was intended to limit the state's waiver of sovereign immunity and, therefore, to limit its exposure to liability for actual compensatory damages *in tort cases*." (*Id.* at p. 146, italics added.) *Kizer* does not help X.M. because his injury is one that does sound in tort, and as such, section 818 *does* apply.

The damage provision at issue in *LACMTA*—a $25,000 civil penalty for each violation of the Unruh Act—is also different from the treble damages provision here in a crucial regard: that statute makes the civil penalty available to plaintiffs *in addition to* actual damages and "exemplary damages to be determined by the jury." (*LACMTA*, *supra*, 123 Cal.App.4th at p. 267.) Based on this statutory structure, the court found a basis to conclude the Legislature regarded the punitive damages and civil penalty "as *separate* remedies." (*Ibid.*) Otherwise, one would be superfluous, and the availability of both "would tend to create double recoveries." (*Ibid.* ["By separately providing for

20

exemplary damages *and* a civil penalty, the Legislature obviously intended for the two categories of relief to be distinct from one another"].) In contrast, section 340.1 does not authorize exemplary or punitive damages in addition to treble damages and therefore, unlike the Unruh Act, does not provide a basis to conclude the primary purpose of the treble damages is something other than punitive. And, as the *LACMTA* court explained, civil penalties do not bear the hallmarks of punitive damages. They don't require willful misconduct and they provide no discretion to the fact finder regarding their amount. (*Ibid.*) A comparison to *LACMTA*, in our view, underscores the punitive nature of section 340.1's treble damages.

Childhood sexual assault cases, while no doubt posing their own unique difficulties, do not present the same complexities of proof, both of violations and damages, that antitrust and RICO actions do. And, unlike California's workers' compensation scheme (which is not designed to fully compensate an employee for an on-the-job injury) or civil penalties to pay for the cleanup of oil spills (which can cause wide-reaching, unquantifiable damage to the environment), tort damages are designed to make the victim whole in response to injuries that are, for the most part, quantifiable. While punishing cover ups of childhood sexual assault and deterring future cover ups "is a worthy public policy objective, it is not one for which the state has waived sovereign immunity under the Tort Claims Act." (*LAUSD*, *supra*, 64 Cal.App.5th at p. 567.) We conclude section 818's immunity applies to section 340.1's treble damages provision.

## III

## DISPOSITION

We deny the petition. In the interests of justice, the parties shall bear their own costs. (Cal. Rules of Court, rule 8.278(a)(5).)

CERTIFIED FOR PUBLICATION

SLOUGH
J.

We concur:

RAMIREZ
P. J.

RAPHAEL
J.