Filed 11/24/25  In re A.C. CA2/2

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

### SECOND APPELLATE DISTRICT

### DIVISION TWO

| | |
|---|---|
| In re A.C. et al., Persons Coming Under the Juvenile Court Law. | B345237 (Los Angeles County Super. Ct. No. 24CCJP03937A-B) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>        Plaintiff and Respondent,<br><br>        v.<br><br>R.C.,<br><br>        Defendant and Appellant. | |

APPEAL from orders of the Superior Court of Los Angeles County.  Syna N. Dennis, Judge Pro Tempore.  Affirmed.

Keilana Truong, under appointment by the Court of Appeal, for Defendant and Appellant.

Dawyn R. Harrison, County Counsel, Kim Nemoy, Assistant County Counsel, and Peter Ferrera, Principal Deputy County Counsel, for Plaintiff and Respondent.

_____

In this juvenile dependency appeal, R.C. (father) challenges dispositional orders made by the juvenile court. In particular, father, a nonoffending parent, argues substantial evidence does not support the court's order denying his request to place his son and daughter in his care. Father also argues the juvenile court abused its discretion when it ordered monitored visits with his children and required him to enroll in a parenting class.

We find no error and affirm.

## BACKGROUND

1. **The Family**

Father and A.F. (mother) have four children together. Only two of their children—A.C. (son) and G.F. (daughter)—are involved in this appeal. When the underlying proceedings began, son was 14 years old and daughter was almost 12. They both lived with mother, who had sole legal and physical custody of them. Mother and father's older children, S.F. (sister) and R.C., are adults. Mother and father do not live together and are no longer in a relationship. Father has two younger children from a different relationship.

Father has a significant criminal history, including arrests for domestic violence against mother and being under the influence of a controlled substance. He spent eight years in

2

prison for shooting a gun in the air. He was released in 2018. Mother has a long history of substance abuse.

The family has two previous dependency cases, involving similar allegations as those at issue here (e.g., neglect, substance abuse, failure to provide). The most recent dependency case ended in 2016 with a final custody order granting mother sole physical and sole legal custody of the four children and monitored visitation for father.

## 2. Events Preceding Petition

In December 2024, the children were detained from mother after law enforcement found drugs, drug paraphernalia, weapons and ammunition at mother's home, all of which were accessible to the children. The Los Angeles County Department of Children and Family Services (Department) opened an investigation.

At the time, father reported he had not had contact with the children for two years. He explained mother no longer allowed him to visit the children after he fathered a child with another woman. Once father learned the children had been detained, he met with a Department social worker, a maternal great aunt, and the children. He said he was "able and willing to have custody of the children," and the children asked to be released to father. Father tested negative for substances. The Department reported no problems or concerns with father's home. Nonetheless, because father had been unable to reunify with the children after the last dependency case, did not have custody of the children, and could not demonstrate he had rectified the reasons for losing custody of the children, the Department could not recommend placement with father. The children were placed with A.S., their maternal great aunt (maternal great aunt).

3

Sister, who was 20 years old at the time, lived with father in a two-bedroom home on a property with three other homes all occupied by paternal relatives. Sister reported she did not have a positive relationship with mother and enjoyed living with father and paternal relatives, where she found needed structure and support. Over the past couple of years, sister had rebuilt her relationship with father and believed he had improved as a parent. When sister first moved in with father, she told him he had not been involved with the children's lives. Nonetheless, she believed he could care for them. Similarly, neither paternal grandfather nor a paternal aunt had concerns about father's ability to care for the children. The paternal aunt indicated father had strong family support because paternal relatives were "very united."

### 3. Petition

In December 2024, the Department filed a two-count Welfare and Institutions Code section 300 petition on behalf of son and daughter.[1] The two counts of the petition were identical and brought under subdivisions (b) and (j) of section 300. They alleged mother put the children at risk of harm by creating a detrimental and dangerous home environment, which included visible and accessible drugs, drug paraphernalia, weapons and ammunition, as well as by allowing maternal relatives with known histories of substance abuse to live in the home with the children. Father was nonoffending.

At the initial hearing on the petition held the following day, the children indicated they wanted to return to mother's care. If that was not possible, they wanted to stay with maternal great

---

[1] Undesignated statutory references are to the Welfare and Institutions Code.

4

aunt or, in the alternative, to be placed with a paternal aunt who lived on the same property as father, but not with father. The children did not want to be separated. Father asked that the children be released to him. He was willing to cooperate with the Department and had family support at home.

The juvenile court indicated it was prepared to release the children to father, but because at the time father's parental status as to daughter was only as her biological father, the court could not release daughter to father. Therefore, the court stated it would release the children to the paternal aunt mentioned by the children, which would allow father to visit the children frequently and conveniently. However, after an off the record discussion, the court concluded it would detain the children from both mother and father, continue the children's placement with maternal great aunt, order unmonitored visitation for father, and continue the hearing for further consideration of the children's placement. The court stated, "I do believe that the father is entitled to custody of his children." Although the children preferred not to be placed with father, the court explained it was required to release the children to their parents "unless there is a safety risk." If at the continued hearing the court determined father was daughter's presumed father, the court intended to release the children to father's care.

At the continued hearing held two days later, the juvenile court found father was daughter's presumed father. The court based its decision on family law documents provided by the parties. Nonetheless, and despite its intentions stated at the hearing held days earlier, the court continued the detention of the children from both mother and father. The court explained that although the family law documents assisted in its parentage

5

finding, those documents "only raise[d] more questions" as to the custody issue. The documents showed father was entitled to monitored visits only, one day a week. Because it remained unclear why father's visits were restricted to monitored and because it was undisputed father had not visited the children for two years, the court found, "as a whole, that it would be in the best interest of the children to remain" placed with the maternal great aunt. The court did, however, maintain its previous order of unmonitored visits for father.

## 4. Further Investigation

In January 2025, a Department social worker spoke with the children. Although both son and daughter stated they were not afraid of father, they rarely saw him and neither had a close relationship with him. Son said he had "no relationship" with father and it was "awkward" to visit him. Son and daughter reported the last time they saw father was Christmas Day 2024, after the court had granted father unmonitored visits. However, son and daughter explained they were with paternal grandmother that day at her home and father, who lived in a separate house next door, mostly stayed in his home and "would just check on them." Daughter said she would visit father as long as son also visited; son said he "might" visit father.

The social worker also spoke with sister. Sister provided the Department with photographs she took at the house where she lived with father. One photograph showed several containers of marijuana on the dining room table. Another showed beer cans stacked in a pyramid shape. Sister stated father had called her the day the children were detained and asked her "to get rid of his marijuana" because a social worker would be coming by the house. Sister acknowledged she also smoked marijuana but

6

noted the marijuana in the photographs belonged to father. Sister said father drank alcohol every day, which led to arguments between them. She said father was verbally aggressive with her when he drank. One time, father had driven while intoxicated and almost ran her over while backing up.

Sister expressed concerns with father's parenting. Sister believed father gave her mixed messages and did not know how to parent or provide structure. For example, on the one hand, father would get angry with sister if she stayed out late, drank alcohol, or smoked marijuana. On the other hand, father invited sister to stay out late and drink with him and his girlfriend at bars, despite the fact sister was under 21 years old. Sister said she had changed the lock on her bedroom door because father used to "barge in her room without permission." Father did not like that she had changed the lock. One night father came home intoxicated and kicked sister's bedroom door, leaving a large hole in the door. Sister provided the Department with a photograph of the hole in her door. Sister said neither son nor daughter had a close bond with father, who used to bribe them to visit him. Sister explained son and daughter did not want to visit father in the past because he used to bring his daughter from a different relationship and he would focus on her. Son and daughter "felt ignored."

In January 2025, the social worker also spoke with maternal great aunt. Maternal great aunt stated son and daughter were very close with mother, but not with father. Maternal great aunt said she had encouraged father to visit the children while they were living with her, but he had only seen them on Christmas. Since then, father had not tried to visit or call the children.

The social worker also spoke with father. He stated, prior to Department involvement, the children visited him on holidays and birthdays. Although under the most recent family law order father had monitored visits only, he explained when he and mother "got along" she allowed him to visit the children unmonitored. Two years earlier, however, mother "cut him off" after she discovered he fathered a child with another woman. Since then, father had "minimal visits and communication with the children." Nonetheless, father believed he had a good relationship with the children. He stated they had grown apart as they got older, which he suspected was a result of mother telling the children he had a new family with the mother of his other children. Although the children and maternal great aunt all reported the last time the children had visited or seen father was Christmas 2024, father told the social worker the children visited on January 11, 2025, which was the day after the social worker spoke with the children and maternal great aunt. No information regarding a January visit was provided.

Although father knew son had ADHD, father generally was unaware of the children's medical histories and did not know who their pediatrician was. When shown the photographs sister had taken, father denied the marijuana was his, instead stating it could have belonged to sister. He said the stacked beer cans were his and laughed. As to the hole in the bedroom door, father stated sister had installed a doorknob backwards and became stuck in her room. He kicked the door to free her. He also said he was reprimanding sister at the time for staying out late and not working or going to school.

In late February 2025, the Department reported father had "made no effort to visit the children even after caregiver

[maternal great aunt] encouraged" him to do so. The children were not sure they wanted to visit father. A Department social worker indicated, "it appears mother and [sister] speak negatively about the father which influences the children's decision."

Also in late February 2025, in advance of adjudication, the final Multidisciplinary Assessment Team (MAT) report was provided to the court. In the report, daughter reiterated she did not have a relationship with father and had seen him only "sporadically" during her life. She did not like talking about it and felt "weird and awkward" seeing father more recently. She did not "feel comfortable when in visits with her father since she does not really know him." Similarly, son stated father was "nonexistent to him" and he did not remember seeing him most of his life. Son also felt "awkward" and "not happy about" visiting with father "since he is a stranger to [son]" and they did not have a relationship. Son also expressed anger and resentment toward father. Father did not respond to calls and text messages to be interviewed for the MAT report.

**5.    Adjudication and Disposition**

A combined adjudication and disposition hearing was held on March 5, 2025. The juvenile court accepted mother's waiver of rights and no contest plea to the petition as amended. The juvenile court dismissed the subdivision (j) count and sustained the subdivision (b) count as amended. Father was nonoffending. The court declared son and daughter dependents of the court under subdivision (b) of section 300.

Counsel for father asked the court to place the children with father. Counsel argued the juvenile court could modify the standing custody order, which granted father monitored visits

9

only, "especially if [father] was the noncustodial parent under . . . section 361.2(a)." Counsel stated the Department had failed to show by clear and convincing evidence that placement with father would be detrimental to the children's safety or physical and emotional well-being. Counsel believed the children were uncomfortable with father because mother made disparaging remarks about him and it had been difficult for father to visit the children through no fault of his own. Emphasizing father was nonoffending, counsel also disagreed with father's case plan, arguing it was not "narrowly tailored."

Counsel for the children, on the other hand, argued the children should remain placed with maternal great aunt. The children said they did not want to be in father's care and would not feel comfortable in his care. Counsel noted sister's concerns about father's ability to care for the children as well as the lack of bond between father and the children.

Counsel for the Department argued clear and convincing evidence supported the Department's position that the children be removed from father's custody and care. Counsel stated father had not filled a parental role in the children's lives and, on previous occasions, the children had been removed from him. Counsel for the Department argued it would be detrimental to place the children with father, noting in part that father drank alcohol every day, drove under the influence, and had no relationship, let alone a parental relationship, with the children.

After hearing argument, the juvenile court removed the children from both mother and father. The court found "by clear and convincing evidence that there is a substantial danger to the physical health, safety, protection, or physical and emotional well-being of the children and there are no reasonable means to

10

protect the children's physical or emotional health without removing them from the physical custody of the parents." The court stated it considered all the circumstances and, although father was nonoffending, the court gave "a lot of weight" to the children's wishes that they not be placed with father. Noting the lack of a bond or relationship between father and the children, the court ordered father to enroll in a parenting class. The court stated, "[I]t would be in the best interest of the children for the father to get any additional tools that he can to help him work on the bond with his children and building a strong relationship with them." Although at the initial hearings the court ordered unmonitored visits for father, the court changed father's visits to monitored because few unmonitored visits had occurred and the children were resistant to those visits.

Father appealed the juvenile court's March 5, 2025, orders.

## DISCUSSION

### 1. Placement

#### a. Applicable Law and Standard of Review

When a noncustodial parent seeks placement of a dependent minor who was removed from the custodial parent, the applicable statute is section 361.2, subdivision (a). (*In re A.T.* (2025) 110 Cal.App.5th 722, 733–735; *In re D'Anthony D.* (2014) 230 Cal.App.4th 292, 303 ["placement with a noncustodial parent is to be assessed under section 361.2"].) That provision provides in pertinent part, "If a court orders removal of a child pursuant to Section 361, the court shall first determine whether there is a parent of the child, with whom the child was not residing at the time that the events or conditions arose that brought the child within the provisions of Section 300, who desires to assume custody of the child. If that parent requests custody, the court

11

shall place the child with the parent unless it finds that placement with that parent would be detrimental to the safety, protection, or physical or emotional well-being of the child." (§ 361.2, subd. (a) (section 361.2).)  The juvenile court must explain in writing or on the record the basis of its determination under section 361.2.  (§ 361.2, subd. (c).)

Here, after the juvenile court removed the children from mother, who had sole physical and legal custody of the children, father sought placement of the children with him.  Accordingly, section 361.2 applies.

"Section 361.2 'evinces the legislative preference for placement with the noncustodial parent when safe for the child.' [Citation.]  In making a finding of detriment, the juvenile court 'weighs all relevant factors to determine if the child will suffer net harm.' [Citation.]  In making this assessment, the court ' "may consider a parent's past conduct as well as present circumstances." ' [Citation.]  The burden is on the party opposing placement to show the child will be harmed if the noncustodial parent receives custody." (*In re A.T.*, *supra*, 110 Cal.App.5th at pp. 735–736.)

We review a section 361.2 detriment finding for substantial evidence.  (*In re A.T.*, *supra*, 110 Cal.App.5th at p. 736.)  In making its ruling, the juvenile court considers all the evidence, both for and against placement with the noncustodial parent. (See *In re Liam L.* (2015) 240 Cal.App.4th 1068, 1088; *In re Patrick S.* (2013) 218 Cal.App.4th 1254, 1262–1263.)  "The juvenile court must make findings of detriment by clear and convincing evidence.  [Citation.]  In applying this heightened standard of review, the question before us is ' "whether the record as a whole contains substantial evidence from which a reasonable

12

fact finder could have found it highly probable that the fact was true." [Citation.] We view the record in the light most favorable to the prevailing party and give due deference to how the trier of fact may have evaluated the credibility of witnesses, resolved conflicts in the evidence, and drawn reasonable inferences from the evidence.'" (*In re A.T.*, *supra*, 110 Cal.App.5th at p. 736.)

> **b.** **Substantial evidence supports a section 361.2 detriment finding and the court's refusal to place the children with father.**

As an initial matter, we address father's concern that the juvenile court may not have applied the correct law (i.e., section 361.2) when considering father's request to have the children placed with him. In its March 5, 2025 rulings, the court employed the detriment language of section 361.2 (discussed above) as well as the "substantial danger" language of section 361, which also addresses the removal and placement of dependent children.[2] Although on the record at the March 5, 2025 hearing counsel for the Department and counsel for father

---

[2] Section 361 provides in part, "A dependent child shall not be taken from the physical custody of their parents, guardian, or Indian custodian with whom the child did not reside at the time the petition was initiated, unless the juvenile court finds clear and convincing evidence that there would be a substantial danger to the physical health, safety, protection, or physical or emotional well-being of the child for the parent, guardian, or Indian custodian to live with the child or otherwise exercise the parent's, guardian's, or Indian custodian's right to physical custody, and there are no reasonable means by which the child's physical and emotional health can be protected without removing the child from the child's parent's, guardian's, or Indian custodian's physical custody." (§ 361, subd. (d).)

13

argued the section 361.2 detriment language, the court used the "substantial danger" language from section 361 and not the detriment language.

We agree it is not clear whether the juvenile court correctly applied section 361.2 or incorrectly applied section 361. Nonetheless, because the relevant language in both statutes is substantially the same for present purposes, we conclude this is immaterial. Section 361 allows removal of a child from a custodial parent if residing with the parent poses "a substantial danger to the physical health, safety, protection, or physical or emotional well-being" of the child. (§ 361, subds. (c)(1) and (d).) Section 361.2 permits the court to refuse placement of a child with a previously noncustodial parent if such placement "would be detrimental to the safety, protection, or physical or emotional well-being of the child." (§ 361.2, subd. (a).) "Courts have concluded the two statutes are 'fundamentally the same' with regard to their respective 'substantial danger' (§ 361(d)) and 'detriment[]' (§ 361.2(a)) requirements." (*In re A.T.*, *supra*, 110 Cal.App.5th at p. 736.) Thus, even if the juvenile court incorrectly applied a "substantial danger" standard instead of the "detrimental" standard, any such error would be harmless here.

Turning to the merits of father's argument, we consider whether substantial evidence supports a section 361.2 detriment finding such that the juvenile court properly denied father's request to have the children placed with him. In its remarks on the record, the juvenile court stated, "I have to consider all of the circumstances," and highlighted the children's sentiments about being placed with father. The court indicated it had "to give that a lot of weight given their ages." On appeal, father argues these

14

facts do not constitute substantial evidence and, therefore, the court's ruling must be reversed. We are not persuaded.

It is undisputed a dependent minor's preference regarding placement is not dispositive. (*In re A.C.* (2020) 54 Cal.App.5th 38, 43.) Nonetheless, and similarly undisputed, the minor's preference is relevant and correctly considered by the juvenile court. (*Ibid.*) Thus, here, the juvenile court was correct to consider the children's clear desire not to be placed with father.

Importantly, however, the children's express desire was not the only evidence supporting the court's ruling. Although the juvenile court did not list additional facts supporting its decision, it stated it had "to consider all of the circumstances." We presume the court did as it said. Other facts supporting the court's ruling include sister's concern about father's parenting skills. Father kicked in sister's bedroom door and used to barge into her bedroom without permission. Sister also revealed father drank every day (which led to him being verbally aggressive), sometimes drove while intoxicated, and used marijuana. Moreover, at the conclusion of the family's last dependency proceedings, father was denied both legal and physical custody of the children and granted monitored visitation only. Although during the proceedings below father cooperated with the Department, he made little if any effort to see or spend time with the children. He did not respond to calls and text messages inviting him to participate in the MAT report. Finally, it was undisputed the children and father had not seen each other for two years prior to the underlying proceedings and had a fragile, if any, relationship. It is telling that the juvenile court changed its mind from initially indicating it would place the children with father to denying father's request for placement. As more facts

15

were provided, the court was persuaded its initial inclination was incorrect and release to father would in fact be detrimental to the children.

On appeal, father highlights facts showing it would not have been detrimental to place the children with him.  For example, father points to the Department's positive assessments of his home, his cooperation with the Department, and sister's initial comments that she liked living with father and received support from paternal relatives.  In addition, at the start of the underlying proceedings, sister stated she believed father could provide appropriate care for the children.  Other family members stated the same.  There was evidence that mother and sister spoke poorly of father to the children thus influencing their perception of him.  In essence, father invites us to reweigh the evidence, which is an invitation we cannot accept.  (*In re A.T.*, *supra*, 110 Cal.App.5th at p. 736.)  " 'The power of the appellate court begins and ends with a determination as to whether there is any substantial evidence, contradicted or uncontradicted, which will support the conclusion reached by the trier of fact.' " (*In re A.F.* (2016) 3 Cal.App.5th 283, 289.)

Father also argues sister's statements regarding his alcohol and marijuana use were unsubstantiated and unpersuasive.  However, sister provided photographs not only of marijuana and empty beer cans at father's home, but also a photograph of the large hole father put in her bedroom door when he was intoxicated.  Father also explains lack of a parental relationship on its own cannot support the court's order.  As discussed above, however, lack of a relationship with father is not the sole piece of evidence supporting the court's refusal to place the children with father.  Finally, father relies on *In re C.M.* (2014) 232

Cal.App.4th 1394 and *In re Patrick S.*, *supra*, 218 Cal.App.4th 1254 to support his position. For the reasons stated in the Department's respondent's brief, we find those cases unpersuasive here.

On the record before us, which includes the children's express desire not to be placed with father, father's general disinterest in the children, father's alcohol and marijuana use, and the absence of a bond between father and the children, we conclude substantial evidence supports a finding that placement of the children with father would have been "detrimental to the safety, protection, or physical or emotional well-being of the child[ren]." (§ 361.2.)

## 2. Monitored Visitation and Parenting Class Orders

### a. Applicable Law and Standard of Review

In determining the proper disposition for a dependent child, the juvenile court considers all relevant and material evidence, including the Department's social studies and assessments of the child. (§ 358, subd. (b)(1).) Under Section 362, the court "may make any and all reasonable orders for the care, supervision, custody, conduct, maintenance, and support of the child" and "may direct any reasonable orders to the parents or guardians of the child . . . as the court deems necessary and proper to carry out this section." (§ 362, subds. (a), (d).)

" 'The juvenile court has broad discretion to determine what would best serve and protect the child's interests and to fashion a dispositional order accordingly.' " (*In re Briana V.* (2015) 236 Cal.App.4th 297, 311.) "The problem that the juvenile court seeks to address need not be described in the sustained section 300 petition. [Citation.] In fact, there need not be a

17

jurisdictional finding as to the particular parent upon whom the court imposes a dispositional order." (*Ibid.*)

As the parties agree, we review the juvenile court's disposition orders under the abuse of discretion standard. (*In re Briana V.*, *supra*, 236 Cal.App.4th at p. 311.) We will uphold the order unless it exceeds the bounds of reason. (*In re Stephanie M.* (1994) 7 Cal.4th 295, 318–319; *In re L.W.* (2019) 32 Cal.App.5th 840, 851.) " 'When two or more inferences can reasonably be deduced from the facts, the reviewing court has no authority to substitute its decision for that of the trial court.' " (*In re Stephanie M.*, at p. 319.)

### b. Monitored Visitation

Father argues the juvenile court abused its discretion in ordering his visits with the children be monitored. We are not persuaded.

Although initially the juvenile court ordered unmonitored visits for father, the children had been extremely reluctant to visit with him and consistently expressed unease at the prospect of visits. Additionally, during the time he was allowed unmonitored visits, father did not make any real effort to see or even contact the children. Given the children's evident uneasiness and lack of a relationship with father, combined with father's corresponding lack of initiative in visiting the children, it was not an abuse of discretion for the juvenile court to order monitored visits. Under the circumstances, it was reasonable to consider that visits might be easier to achieve with a monitor present.

### c. Parenting Class

Similarly, we are not persuaded by father's argument that the juvenile court abused its discretion when it ordered father to

enroll in a parenting class. Citing section 362, father argues the juvenile court's parenting class order was an abuse of discretion because it was not "designed to eliminate those conditions that led to the court's finding that the [children are persons] described by Section 300." (§ 362, subd. (d).) Father notes the court exercised jurisdiction over the children based solely on mother's conduct, while he was nonoffending. Father claims, therefore, the parenting class requirement for him was improper and unnecessary.

Father's argument reflects an overly narrow view of the statutory language. As noted above, the juvenile court has broad discretion to make orders with the children's best interests in mind, even if those orders apply to nonoffending parents and even if the problem addressed is not described in the sustained petition. (*In re Briana V.*, *supra*, 236 Cal.App.4th at p. 311.) "There need only be a nexus between the services ordered and the conditions that gave rise to the finding that the children come within section 300." (*In re A.F.* (2024) 102 Cal.App.5th 778, 785.)

Here, there is a nexus between the court's parenting class order and the conditions that gave rise to dependency jurisdiction. Father correctly notes he was nonoffending such that he is not mentioned in the sustained petition. Nonetheless, father's extended absence from the children's lives and his general failure to parent them were part of the broader conditions that gave rise to dependency jurisdiction in this case. Since the last custody order issued in 2016 (which granted mother sole physical and legal custody of the children and father monitored visitation), there is no indication father made any effort to regain custody of the children, to obtain unmonitored visits from the family court, to foster a relationship with the

19

children, or even to ensure they were safe with mother.  Father did not fill a parental role, or any role, in the children's lives, which presumably lead to him being ignorant of the children's circumstances at home with mother.  Had father known how to foster and maintain a parental relationship with the children, he likely would have been in a better position to ensure their safety or, at the least, be aware of their circumstances.

On this record, it was not unreasonable and not an abuse of discretion for the court to determine father and, by extension, the children would benefit from father's participation in a parenting class.

## DISPOSITION

The juvenile court's March 5, 2025 orders are affirmed.

NOT TO BE PUBLISHED.


LUI, P. J.

We concur:



RICHARDSON, J.



SIGGINS, J.*

---

* Retired Presiding Justice of the Court of Appeal, First Appellate District, Division Three, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.